[S. F. No. 10214.  In Bank.—October 31, 1922.]

UNION IRON WORKS et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, etc., et al., Respondents.

[1] Workmen's Compensation Act — Underlying Principle. — The underlying principle upon which the Workmen's Compensation Act rests is the providing of compensation to an employee for injuries resulting from his employment which is to be borne by the industry as a part of the cost of production.

[2] Id.—Primary Purpose of Industrial Compensation.—The primary purpose of industrial compensation is to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work and also to bring about his recovery as soon as possible in order that he may be returned to the ranks of productive labor.

[3] Id.—Medical Treatment—Nature of.—The medical treatment required by section 15 (a) of the Workmen's Compensation Act to be furnished an injured employee by his employer is such as will reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury.

190 Cal.—3

[4] ID.—FURNISHING OF REQUIRED TREATMENT—ACTS TANTAMOUNT TO REFUSAL.—The refusal after more than three years of unsuccessful treatment on the part of an employer's physicians to operate on an employee who had both legs and an arm broken, despite repeated requests to do so, which refusal extended over a period of nine months, during which time the injured employee continued to suffer and his condition apparently grew worse, was tantamount to a refusal to furnish the treatment seasonably required by the statute.

[5] ID.—TREATMENT BY PHYSICIAN SELECTED BY EMPLOYEE—COMPENSATION FOR EXPENSES—ESSENTIALS.—Before an injured employee will be entitled to compensation for expenses incurred in the treatment of him by a physician of his own selection it must be shown that the treatment not only was a success but that it was reasonably and seasonably necessary to cure and relieve him, taking all the circumstances into consideration.

[6] ID. — MEDICAL SERVICES — EXTENSION OF TIME — JURISDICTION OF COMMISSION.—Under section 15 (a) of the Workmen's Compensation Act, as amended in 1915, the Industrial Accident Commission may extend the right of an injured employee to medical services after as well as before the expiration of ninety days after the injury, the length of time for which an employee is entitled to such services being the length of time necessary to his complete recovery and section 20 (d) of the act giving the Commission continuing jurisdiction over all its awards for two hundred and forty-five weeks.

[7] ID.—INDEFINITE EXTENSION OF TIME—ACTS OF EMPLOYER.—Where for three years after the expiration of the ninety-day period provided by section 15 (a) for the furnishing of medical services to an injured employee, the employer not only continued to supply but expressed its willingness to supply further medical treatment, such action was tantamount to a consent to an indefinite extension of the ninety-day period and a waiver of the right to object to the power of the Commission to proceed in the premises.

[8] ID.—AMENDMENT OF AWARD—ALLOWANCE OF EXPENSES OF OPERATION—JURISDICTION.—Where an injured employee who had been unsuccessfully treated for three years by his employer's physicians employed a physician of his own selection and underwent a successful operation after the employer's physicians refused to operate, the Industrial Accident Commission had jurisdiction to amend its award allowing the employee the expenses incurred in the performance of the operation, such operation being a new development sufficient to justify the amendment.

---

8.  Costs of medical attendance as element of recovery under Workmen's Compensation Act, note, L. R. A. 1917D, 178.

PROCEEDINGS in Certiorari to review an award of the Industrial Accident Commission. Award affirmed.

The facts are stated in the opinion of the court.

Thos. W. Slaven and Wilson & Wilson for Petitioners.

A. E. Graupner, Warren H. Pillsbury and Heidelberg & Murasky for Respondent.

LENNON, J.—This proceeding presents the petition on *certiorari* of Union Iron Works and its successor in interest, Bethlehem Shipbuilding Corporation, to have reviewed an award of the Industrial Accident Commission to one Thomas Henneberry of $1,446.90.

The facts upon which the award is founded, briefly stated, are these: On September 14, 1916, said Thomas Henneberry, sixteen years of age, hereinafter referred to as the injured employee, while employed as a rivet heater by the Union Iron Works, fell from a ladder breaking both legs and an arm. It is conceded that his injury arose out of and in the course of his employment. The petitioners herein placed him under the care of doctors Buell and Hunkin, but later removed him to their own private hospital, where he was treated by petitioners' own physicians. The injuries were severe, and for four years after the injury there was a continuous discharge of pus from one leg due to necrosis of the bone and unhealed wounds. During that time the injured employee was obliged to go about on two crutches and was wholly unable to work. During the entire period of four years after leaving the hospital he called daily at the hospital for medical treatment, which consisted largely in changing the dressing of the injured leg. His condition apparently growing worse, and having lost faith in the treatment administered him by the physicians at petitioners' hospital, he of his own accord, on February 18, 1920, consulted Dr. Hunkin, who advised an immediate operation to remove the diseased bone. This advice was reported to the petitioners' physicians, but it was their opinion that such an operation would not be opportune until the clearing up of a discharging sinus in the left leg, and in this conclusion they were confirmed by the opinion to the same effect of

another physician and that of the medical director of the Industrial Accident Commission. Petitioners, therefore, refused to operate. After waiting nine months for petitioners' physicians to relieve his condition, the injured employee in November, 1920, abandoning the treatment of petitioners' physicians, placed himself under the care of Dr. Hunkin. Two operations were performed by Dr. Hunkin, one on November 22, 1920, and the other on January 2, 1921. The operations were a complete success. The flow of pus was stopped, the broken bones were united, the wounds were healed, and the injured employee discarded his crutches and again became self-supporting.

On May 17, 1918, nearly two years after the injury, a controversy having arisen as to the fixing of the injured employee's wages for the purpose of determining the proper rate of disability compensation payable to him, petitioners herein filed with the Industrial Accident Commission a petition setting forth, among other facts of the controversy, that the injured employee was still under medical treatment and that the extent of his disability was still incapable of determination and asking that an award be made as to the amount to which he was then entitled. A hearing was had thereon on July 1, 1918. The commission made and filed its findings and award allowing the injured employee the sum of $682.50 and the further sum of $15 a week, payable until the termination of the period for which permanent disability might be payable or until the further order of the commission. Upon the last-mentioned hearing it was agreed by all of the parties that the petitioners herein had continued to furnish medical treatment to the injured employee and that they would continue to do so as long as it was needed. The commission did not in its findings direct or provide for the furnishing by the petitioners herein of any further medical or surgical services nor did it extend by formal order the ninety-day period during which petitioners were required by the terms of section 15 (a) of the Workmen's Compensation Act to furnish medical and surgical services. The commission, however, by its findings in this behalf, reserved to itself the power to make a further award in the premises by declaring that ''the extent of said permanent disability cannot be determined at this time, but will, upon request of

any party in interest after such disability is in a condition to be rated, be determined and award amended accordingly."

In April, 1921, three months after the last operation by Dr. Hunkin, and nearly three years after the making of the original award, the injured employee applied to the commission for an award of $1,446.90 for the payment of expenses incurred by him in having the said operation performed by Dr. Hunkin and for hospital fees and treatment attendant upon the operation. On May 17, 1921, the commission made an order granting said application and further directing the petitioners' physicians "to furnish such further medical and therapeutic treatment as may be required to cure and relieve the employee from the result of said injuries" and providing further that "the time within which such treatments are required under the terms of the aforesaid act is . . . extended accordingly."

Section 15 (a) of the Workmen's Compensation, Insurance and Safety Act, which governs and controls the jurisdiction of the commission to allow an award for medical treatment furnished an injured employee, as originally enacted in 1913, read as follows:

"Where liability for compensation under this act exists such compensation shall be furnished or paid by the employer and be as provided in the following schedule: (a) Such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches and apparatus, as may reasonably be required at the time of the injury and within ninety days thereafter, to cure and relieve from the effects of the injury, the same to be provided by the employer, and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing the same." (Stats. 1913, c. 176, p. 279.)

In 1915 this section was amended to read as follows:

"Where liability for compensation under this act exists such compensation shall be furnished or paid by the employer and be as provided in the following schedule: (a) Such medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches and apparatus, including artificial members, as may reasonably be required at the time of the injury and within

ninety days thereafter, *unless such time is extended by the commission,* to cure and relieve from the effects of the injury, the same to be provided by the employer, and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing for the same.'' (Stats. 1915, c. 607, p. 1079.)

The only difference between the statute in force in 1915, at the time of the accident, and the statute as originally enacted is the insertion of the italicized words, ''unless such time is extended by the commission.''

The statute was again amended in 1917 by eliminating the ninety-day time limit but leaving the statute in every other particular identical in its provisions as it existed in 1915. The accident, however, occurred in September, 1916, and, therefore, the power of the commission to make the award in question must be found within the provisions of the statute as it stood in 1915.

The award was allowed by the commission under the provisions of the statute as it existed in 1915 upon the theory that even though it be conceded, as indeed it must be, that petitioners' physicians in refusing to operate acted in the utmost good faith and upon what then seemed to them to be best for the injured employee, nevertheless the successful result of the operation performed by another physician demonstrated that, despite the opinions of petitioners' physicians, an operation was necessary to cure and relieve the injured employee and that, therefore, the refusal of petitioners' physicians to operate seasonably was in effect the refusal of petitioners to furnish such medical and surgical treatment as was reasonably and seasonably required.

It is the contention of petitioners herein that the provisions of the statute in question render the employer liable for expenses incurred by the injured employee for medical services only in the event of the employer's neglect or refusal to furnish competent physicians and proper medical services and that if, as in the instant case, the employer offers to or does furnish competent and skilled physicians he cannot be held liable for the expenses incurred by the injured employee in procuring another physician. It is insisted that this must be so even though while under the care of the employer's physician the in-

jured employee's condition does not improve. In other words, it is one of the contentions made in support of the writ that the duty of the employer is not to furnish services which will cure the employee, but to furnish in good faith the services of a competent physician.

It may be conceded that if this were an action for malpractice or one founded upon the old common law liability of the employer that the time to determine whether a surgical operation was reasonably required would be before the operation, and that if, at that time, there was a difference of opinion among competent physicians as to the necessity of an operation, no liability could be predicated upon a failure to operate. The proceeding before the commission, however, was not an action for damages, nor was it based upon the idea of fault on the part of the employer. It is founded upon the provisions of the Workmen's Compensation Act, from which the theory of fault is wholly eliminated. [1] The underlying principle upon which the Workmen's Compensation Act rests is, as its title indicates, the providing of compensation to an employee for injuries resulting from his employment. It emanates from the economic thought that personal injury losses incident to an industry is a part of the costs of production to be borne, just as the depreciation and replacement of a machine is borne, by the industry itself, which compensation will be included in the cost of the product of the industry. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [151 Pac. 398].)

[2] The primary purpose of industrial compensation is to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work and also to bring about his recovery as soon as possible in order that he may be returned to the ranks of productive labor. By this means society as a whole is relieved of the burden of caring for the injured workman and his family, and the burden is placed upon the industry. That the injured workman and his dependents may be cared for, compensation in the form of disability benefits is provided for by the act approximating the wages earned by the employee and varying with the degree of disability and dependency. And to secure the speedy return of the workman to productive employment it is provided that

medical and surgical services shall be furnished by the
employer. This liability for medical and surgical services
is not, therefore, a burden placed upon the employer as a
penalty for any failure of duty on his part, but is merely
a part of the whole compensation due the employee as the
result of his injury. It therefore follows that the medical
and surgical services contemplated and called for by the
statute in question should be such as will tend to secure
the return of the workman to productive employment.

[3] In other words, and perhaps more precisely stated,
the treatment required by the statute is such as will reason-
ably and seasonably tend to relieve and cure the injured
employee from the effects of the injury, and manifestly,
if the treatment practiced and persisted in by physicians
furnished by the employer, even though they be conceded to
be skilled and competent in their profession, does not
within a reasonable time effect a cure, and thereafter a
course of treatment prescribed by other physicians pro-
cured by the injured employee does in fact seasonably
effect a cure, then it cannot be said that the employer has
furnished such medical and surgical treatment as was
reasonably and seasonably required. [4] The successful
result of the operation in the instant case demonstrated,
we think, that it was the treatment reasonably required
to cure and relieve the injured employee from the effects
of his injury, and that being so, the refusal, after more
than three years of unsuccessful treatment on the part
of petitioners' physicians to operate, despite repeated re-
quests to do so, which refusal extended over a period of
nine months, during which time the injured employee con-
tinued to suffer and his condition apparently grew worse,
was tantamount to a refusal to furnish the treatment
seasonably required by the statute.

It is insisted by the petitioners that the award cannot be
allowed to stand without giving to the injured employee not
only the absolute right to refuse such medical services as
may be tendered and furnished to him by his employers,
but the right as well to seek and secure the services of
other physicians and surgeons at the expense of the em-
ployer if, perchance, a physician or surgeon can be found
who will prescribe and advise a treatment different from
that prescribed by the physicians furnished by the employer.

In other words, it is contended that an employer will be
required to pay any and all doctor bills which an employee
might at his whim incur. No such result, however, follows
from the view which we have taken of the situation pre-
sented in the instant case. **[5]** Before the injured em-
ployee would be entitled to compensation for expenses in-
curred in the treatment of him by a physician of his own
selection it would have to be shown that the treatment not
only was a success but that it was reasonably and season-
ably necessary to cure and relieve the injured employee.
Moreover, all the circumstances attending the treatment
by the employer's physician would have to be weighed by
the commission in order to determine whether or not the
treatment prescribed by the employer's physicians would, if
it had been persisted in, have produced as speedy and
as satisfactory a cure as did the treatment of the physicians
resorted to by the injured employee. And of course, in
coming to a conclusion in this behalf, the commission
would necessarily take into consideration the period of
time covered by the treatment of the employer's physicians
and the results obtained during that time. In other words,
the injured employee will be permitted, at the peril of
having himself to pay the expenses of medical treatment, to
secure the services of physicians other than those pro-
vided by his employer, and this peril will attach unless it
can be shown from all of the circumstances of the situa-
tion, including the success of the operation, that his desire
and decision to secure the services of other physicians was
warranted.

On the other hand, if we were to hold, as petitioners
contend, that the only duty of the employer is to provide
competent physicians who prescribe a particular course of
treatment, it would mean that if the physicians of the
employer, even though they in good faith persisted in
a course of treatment manifestly ineffective and demon-
strated ultimately to be wrong and ineffectual, the employee,
nevertheless, would be compelled to continue under such
treatment or secure at his own expense effective surgical
treatment. This cannot be so. In *Massachusetts Bonding
etc.* v. *Pillsbury,* 170 Cal. 767, 770 [151 Pac. 419], this
court held that although in the first instance the employer
had a right to designate the physician who should attend

the injured employee, nevertheless, if becoming dissatisfied the injured employee was directed to another physician who was out of town, the injured employee was not bound to wait indefinitely for his return, but could seek the advice of his own physician, and the employer would be liable for the expense so incurred. So in the instant case, the injured employee became dissatisfied with the course of treatment. The employer, however, instead of directing him to another physician, as in the former case, absolutely refused to change the treatment whereupon the injured employee sought the services of a physician of his own selection. The award was upheld in the former case upon the ground that the injured man acted upon reasonable and proper grounds in seeking the services of his own physician. In view of all of the circumstances, including the successful result of the operation, it cannot be denied that the injured employee in the instant case likewise acted reasonably and upon proper grounds in seeking the services of Dr. Hunkin. The opinion in the case above cited, while not definitely deciding the point here involved, strongly supports the conclusion arrived at in the instant case.

[6] It is the contention of petitioners that in any event the right of the injured employee to medical services was limited to ninety days. And in this behalf it is argued that section 15 (a) as amended in 1915 limited the right of an injured employee to medical services to a period of ninety days after the injury was received, unless such time was extended by the commission prior to the expiration of the ninety days, or, in other words, that the Industrial Accident Commission could in its award, if made within ninety days after the injury, or by a separate order made within such time, have extended the time for the furnishing of medical and surgical treatment to an injured employee, but that the commission having failed within such ninety days by formal order to grant such an extension of time, its power to grant compensation for such services rendered to the employee after the expiration thereof, ceased and was as if it had never existed.

As previously indicated, the section last above referred to, as originally enacted in 1913, merely provided that as a part of his compensation benefit the injured employee should be entitled to medical services for ninety days.

Under the statute as then worded, the employer could, therefore, at the expiration of the ninety days, cease entirely to furnish any and all medical services regardless of the nature or the seriousness of the injury and notwithstanding the fact that further medical attention was necessary to effect a cure. This would be so although the prolongation of the recovery of an injured employee beyond the ninety-day period might be due to the mistake or wrong diagnosis of the physician furnished by the employer and the commission, because of the arbitrary limitation imposed by the statute, would be powerless to compel the employer to furnish further medical attention. In 1915, however, the section was amended to render the employer liable for the medical services required "within ninety days thereafter, *unless such time is extended by the commission.*" Whether or not it was within the power of the commission to make the award in the instant case, therefore, depends upon the purpose and intention of the legislature in so amending the statute.

The argument in part advanced by petitioners in support of their contention is that this section of the Workmen's Compensation Act is analogous to section 1054 of the Code of Civil Procedure in that both contain a reference to an extension of time and that inasmuch as it has been held that the extension of time allowed by section 1054 of the Code of Civil Procedure must be granted within the time allowed by the code for the doing of the act, and that an order made after the expiration of the code time or of a prior order extending the time is void, we must, in the instant case, so interpret section 15 (a) of the Workmen's Compensation Act.

The fact that a word or phrase is common to both statutes will not suffice to make those decisions a controlling criterion for the construction of the statute before us. In the construction of a statute the intention of the legislature is to be ascertained and applied. (Code Civ. Proc., sec. 1859.) The rule and reason for the rule enunciated in the decisions referred to, that an extension of the statutory time to do the things covered by section 1054 of the Code of Civil Procedure may not be had unless made within the time originally designated do not apply with equal force to the statute in question here. The two sections are,

we think, dissimilar in purpose and effect and wholly un-related in principle. The extension of time involved in section 1054 of the Code of Civil Procedure relates to purely procedural acts which, pursuant to the provisions of other sections of the same code, must be performed by one of the parties to pending litigation within a designated time. The nature of the acts to be performed in the first instance, considered in conjunction with the condition that good cause must be shown as a prerequisite to an extension of the designated time indicates that it was the legislative intent that the time within which the acts should be per-formed was intended as a limitation of the power of the court to grant an extension of time. In other words, the provisions of the code sections which designate the time within which the procedural acts, covered by section 1054 of the Code of Civil Procedure, are to be performed, are mandatory and the fact that an extension of time within which to do any of the enumerated procedural acts may be had under the provisions of section 1054 only upon ap-plication of the party desiring it and upon good cause shown carries with it the necessary implication that the ap-plication and order for the extension of time must be made within the time fixed by the statute in the first instance for the performance of the act. On the other hand, section 15 (a) of the Workmen's Compensation Act, neither in terms nor by necessary implication, places a limit upon the time within which, nor does it prescribe the method by which, an extension shall be made. Obviously the statute gives to the commission the power of determin-ing of its own motion whether, under all the facts of any individual case, further medical treatment is necessary and the authority of the commission to extend the period of liability carries with it, no limitation to the contrary ap-pearing in the statute, the power to make the extension dur-ing or after the expiration of the ninety-day period. (*Hart* v. *Plum,* 14 Cal. 149.) This is so because of a rule of statutory construction which, generally and substantially stated, provides that in the absence of a good reason why the statutory grant of a right may not be exercised be-yond as well as within the limits of a designated time, and nothing appearing, either in the statute granting the right or in other statutes creating and controlling the

same subject matter, indicating that the legislature did not intend that the right granted should be exercised beyond the time designated in the first instance rather than not exercised at all, it may be assumed that it was the legislative intent that if the right granted be not exercised within the statutory limit it might be exercised after the expiration of that time. (Black on Interpretation of Laws, 2d ed., sec. 155; *State ex rel. Cothren* v. *Lean,* 9 Wis. 254, 266.)

In the instant case no good reason appears why the commission should be compelled to make an extension, by formal order, within the ninety-day period. Clearly the amendment conferring the power of extension was enacted by the legislature solely for the benefit of the injured employee. And it must have been the intention of the legislature that the right to medical services so conferred for a period longer than ninety days should depend upon the necessity for such services. The primary purpose of the act being the payment of compensation in avoidance of the possibility of pauperism, often attendant upon the loss of earning power of the wage-earner and thus relieve society of a consequent burden, the amount of compensation to accomplish this result would be that which would preserve to the workman practically the same economic status which he held prior to the injury—that is the amount necessary to save his family from dependency during his period of unemployment plus the cost of his own rehabilitation. It follows that the length of time for which the employee should be entitled to medical services is the length of time necessary to his complete recovery. Otherwise, if he be required to pay his medical expenses after a certain time, by just so much is the compensation for the support of his dependents lessened. If, therefore, his right to services be construed to depend upon the fact of whether or not an order was made by the commission within a certain time, the purpose of the statute is defeated. The statute imposes a duty on the commission, but as the injured employee has no control over its conduct, it would be a harsh construction which would deprive him of the benefits of the statute merely because the commission had neglected or failed to properly and promptly perform a duty.

Furthermore, the interpretation of the statute contended

for by petitioners would place upon the commission the duty of following one of two impractical courses. Thus, before the expiration of the ninety days it would be necessary for the commission to hold a hearing to determine in advance whether or not the necessity for medical services would continue longer than ninety days. Unless such hearing were held just immediately prior to the ninety-day expiration it would in some cases be impossible to determine the necessity for further medical services. Again, other cases might arise in which even though the hearing were held just before the expiration of the statutory time, the employee would lose the right to such services because of the difficulty, if not impossibility, of determining in advance the necessity for such services. As the only alternative the commission would, in order to avoid this result, be forced to make an order extending the time automatically upon the report of the injury.

The power of the commission being then the determination and declaration of whether an employee reasonably required further medical or surgical treatment after the expiration of the ninety-day period, there is no reason why such determination should not be made after the ninety-day period. Indeed, in most cases, this would seem as a practical matter to be the better if not the only course. Under section 20 (d) of the Workmen's Compensation Act, the commission is given continuing jurisdiction over all its orders and awards for 245 weeks, and the commission, therefore, had the power at any time within that period to make an award determining that further medical services were necessary after the expiration of ninety days from the injury.

[7] Aside from the foregoing considerations, the record before us shows, as has been previously indicated, that for three years after the expiration of the ninety-day period the petitioners here not only continued to supply, but expressed their willingness to supply, the injured employee with further medical treatment. This was tantamount to a consent to an indefinite extension of the ninety-day period, and the petitioners having, by word and conduct, acquiesced in a course of procedure which was in fact an extension of the statutory period of liability for medical services, will not now be heard to complain of the manner in which such

extension was made and will be held, by reason of such word and conduct, to have waived their right to object to the power of the commission to proceed in the premises.

[8] It is the further contention of petitioners that conceding the power of the commission to make an extension after the expiration of the ninety-day period, nevertheless the commission had no jurisdiction or authority to amend the original award made in July, 1918. This contention is based upon the decision in the case of *Georgia Cas. Co.* v. *Industrial Accident Commission,* 177 Cal. 289, 293 [170 Pac. 625], which held, in effect, that the continuing jurisdiction of the commission to rescind, amend, or alter its own orders, decisions and awards for a period of 245 weeks was limited to making such changes as were required by the occurrence of new facts arising after the date of the original decision. In this behalf it is insisted that there are no new facts arising after the date of the original decision, inasmuch as the necessity for a surgical operation existed at the time of the original award. The power of the commission to make the amended award was denied in the case above referred to and relied upon by petitioners upon the express ground that no evidence was presented as to any new facts occurring and the award had been based solely upon a reconsideration of the facts upon which such former award was made. While it may be conceded that all the conditions as to the necessity of medical and surgical services to the injured employee which existed at the time of the amended award existed at the time of the original award, the amended award in the instant case was not based solely, or at all, upon a reconsideration of the facts upon which the former award was made. The award was based upon the fact that an operation had been performed subsequent to the original award, and this was, in our opinion, a new development sufficient to justify the commission in amending its original award.

Concerning the contention of petitioners that the allowance to the injured employee was improper, inasmuch as part of the expenses for the operation had been paid by the Boilermakers' Union, it will suffice to say that there is nothing in the record to show that such money was voted by the union as a gratuitous gift to the injured employee or that the union undertook to become primarily liable for

the expenses so incurred by the injured employee for such medical treatment. In the absence of such showing the defense necessarily fails.

The award is affirmed.

Lawlor, J., Waste, J., Richards, J., *pro tem.,* Wilbur, J., and Shaw, C. J., concurred.