[Civ. No. 5324. Second Appellate District, Division Two.—July 6, 1926.]

SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and NICK SPANOVICH, Respondents.

[1] WORKMEN'S COMPENSATION ACT—ORDER TERMINATING PAYMENTS—REHEARING—JURISDICTION.—Where the Industrial Accident Commission, after making an award in favor of an injured employee allowing him weekly payments of a stated sum and directing the employer to furnish the employee further medical treatment necessary to cure and relieve him of his condition as indicated in the testimony of a certain doctor, made an order terminating said payments, the Commission had jurisdiction, under section 65a of the Workmen's Compensation Act, to grant a rehearing upon the petition of the employee demanding a rehearing on the ground that the "order terminating payments under findings and award is incorrect on the facts of the case," where no findings of fact were filed with the order terminating payments, and the employer had failed to obey the order requiring the furnishing of medical treatment.

[2] ID.—ALLOWANCE OF INCREASED COMPENSATION AFTER REHEARING—TEMPORARY TOTAL DISABILITY — EVIDENCE. — The Industrial Accident Commission did not act in excess of its jurisdiction under section 20d of the Workmen's Compensation Act in awarding upon rehearing an "increased compensation" to the employee, where the finding allowing greater compensation was based upon the fact that the employer had failed to furnish the medical treatment required by its first order, and upon the taking of

---

1. See 27 Cal. Jur. 501.
2. See 27 Cal. Jur. 492.

additional evidence concerning the then condition of the employee, and his unsuccessful attempts to work since the making of the first order, with the result that the employee was then under a temporary total disability.

[3] ID.—CONCLUSIONS OF INDUSTRIAL ACCIDENT COMMISSION—COMPENSATION — JURISDICTION — CERTIORARI. — In a proceeding in *certiorari* to review an order of the Industrial Accident Commission granting an injured employee increased compensation upon a rehearing which was granted after the Commission made an order terminating payments under its first order, the reviewing court is not concerned with the process of reasoning whereby the Commission may have arrived at its conclusion, and the Commission's order will be affirmed where it acted within its jurisdiction and its award was not unreasonable; and it cannot be said in such proceeding that the method of compensation or the amount as determined by the Commission was in excess of its jurisdiction.

[4] ID.—PERFORMANCE OF SURGICAL OPERATION—COST OF AND NAME OF HOSPITAL UNDETERMINED IN ADVANCE OF ORDER—VALIDITY OF ORDER.—In such proceeding, where the first order of the Industrial Accident Commission required, among other things, that the employer furnish the employee with further treatment as indicated in the testimony of a doctor, which showed that he would favor a surgical operation upon the employee, the fact that the reasonable cost of the operation and the name of the hospital were not fixed or determined at the time of the first hearing did not render the order *functus officio.*

[5] ID. — TEMPORARY TOTAL DISABILITY — EVIDENCE — FINDINGS. — In such proceeding there was sufficient evidence to support the finding that, in view of the conditions of the open labor market, the employee's injury caused temporary total disability, even granting that the report of the doctor who examined him intimated in substance that, although the employee was incapacitated, some sort of employment might enable him to forget his distress, where it also appears from said report that the employee was unable to compete in the open labor market for any kind or means of livelihood.

[6] ID. — CONSISTENCY BETWEEN AWARDS — EVIDENCE — CHANGE OF CONDITION.—In such proceeding the contention of the employer that the finding of temporary total disability from a specified date indefinitely is inconsistent with the original finding of temporary partial disability from a previous date indefinitely cannot be sustained, where at the time of the first award it appeared that the employee was temporarily partially disabled, but such finding was, of necessity, based upon the showing as of that time, in anticipation of an operation, and upon rehearing it appeared without conflict that no operation had been per-

formed, that the employee had been unable to do any remunerative work, and was therefore totally disabled from said specified date,—a year later than the showing of partial disability.

[7] ID.—SUPPLEMENTAL AWARDS—CORRECTION OF ERRORS IN ORIGINAL AWARD.—Supplemental awards may not be used for the purpose of correcting errors in the original award.

[8] ID. — SUPPLEMENTAL AWARD GRANTING INCREASED COMPENSATION AFTER REHEARING—NATURE OF.—In this proceeding in *certiorari* to review an order of the Industrial Accident Commission granting an injured employee increased compensation upon a rehearing which was granted after the Commission made an order terminating payments under its first order, admitting that the order terminating payments was erroneous because the whole record was not considered, the award granting increased compensation was not made to rectify error, but was granted pursuant to rehearing, and was not supplemental to the order terminating payments, it being subject to a petition for rehearing during the period of twenty days.

---

(1) Workmen's Compensation Acts, C. J., p. 117, n. 58; 31 Cyc., p. 115, n. 44. (2) Workmen's Compensation Acts, C. J., p. 117, n. 58. (3) Workmen's Compensation Acts, C. J., p. 120, n. 11. (4) Workmen's Compensation Acts, C. J., p. 117, n. 52 New. (5) Workmen's Compensation Acts, C. J., p. 115, n. 37. (6) Workmen's Compensation Acts, C. J., p. 117, n. 58. (7) Workmen's Compensation Acts, C. J., p. 117, n. 58. (8) Workmen's Compensation Acts, C J., p. 117, n. 58.

PROCEEDING in Certiorari to annul a supplemental order of the Industrial Accident Commission awarding compensation subsequent to an order terminating payments under previous findings and award.

The facts are stated in the opinion of the court.

Roy V. Reppy and E. W. Cunningham for Petitioner.

G. C. Faulkner for Respondents.

CRAIG, J.—The petitioner seeks by *certiorari* to review supplemental proceedings of the Industrial Accident Commission and to annul the resultant order allowing compensation subsequently to an order terminating payments under previous findings and award.

---

7. See 27 Cal. Jur. 493.

The respondent Spanovich was injured on March 28, 1922, while in the employ of the petitioner herein.   On August 28, 1924, after various hearings he was awarded by the respondent Commission compensation in the sum of $227.24, payable forthwith, and weekly payments of $8.65.   The award was also directed "that defendant (petitioner here) furnish to applicant the further medical treatment necessary to cure and relieve him of the conditions from which he is now suffering, as indicated in the testimony of Dr. H. H. Markel at the hearing on July 29, 1924."   The employer thereafter sought a rehearing upon the award so granted, and a rehearing having been denied, proceeded to make payments in accordance with the original order.

From oral testimony and written reports of physicians and surgeons it appears that the award of August 28, 1924, was based upon evidence tending to show that the employee was so seriously injured that, although he repeatedly sought light work, it was impossible for him to continue more than a few days at a time on account of severe pains caused by the injuries.   A brief history of the case seems requisite to a clear understanding of the findings and orders of the Industrial Accident Commission which are here presented for consideration.   We recite the facts concisely as summarized by Dr. John D. Gillis, who, it may be noted, reported adversely to the applicant's petition for award. After three months no improvement; using various medicines internally and externally; lost his job; sent to doctor at Fresno, then to San Francisco; body cast applied, and retained for sixteen days; sent to hospital and under anaesthetic another cast applied; no improvement after thirty days; procured light work; pain persisted; again tried light work, but unable to continue; reported to free clinic for two months, procured light work, but finally reported back for treatment; provided with back brace, but could not work with brace on, could not work without it; came to Los Angeles in December; "There is no appreciable change in his condition."   Numerous examinations by X-ray and otherwise were made by doctors at various places, from all of which it appeared that there was *no focal infection or cause for arthritis; "no arthritis."*

Thereafter, and on May 20, 1925, the respondent Commission called a supplemental hearing, pursuant to the oral re-

quest of petitioner herein, but without a petition in writing therefor, notifying the parties that it would be held on June 2, 1925. On the latter date the applicant appeared in person, without a representative, and the official report recites, "Defendant represented by its C. H. Chandler, Esq." The referee held a brief informal conversation with Spanovich concerning the experiment of removing his tonsils, but the latter stated that he had been advised by a physician that this should not be done. No testimony was taken, nor was the subject of work mentioned. A report of Dr. Gillis was filed wherein the doctor related in detail all of the facts heretofore mentioned, and in addition thereto stated: "There is no appreciable change in his condition during the last three years; he still has almost continuous pain in the lower left back, which is markedly aggravated when he bends forward, or when he stands erect for any length of time; he has been examined by various doctors throughout the state. He believes at this time he could do light work if procurable." Dr. Gillis recommended that the employee's teeth be examined, "since they are probably acting as a foci of infection. There may be other foci but I have been unable to locate them. He should continue doing work within his limits since by so doing he will have less time to think about his continuous ache in the lower left back." Upon the foregoing statement Dr. H. E. Southworth reported in writing: "It is evident from the doctor's report that he is of the opinion that this applicant is *suffering from chronic arthritis* involving the left sacro-iliac and lumbo-sacral joints. The doctor is of the opinion that recovery from injury of March 28, 1922, *is complete at the present time,* and that present disability is the direct result of a metastic infection depending upon a focus in a distant part of the body." Spanovich remarked: "As far as the operation goes, I wouldn't care, if I could get cured."

No evidence was offered at the supplemental hearing in behalf of the employee, nor was the record of previous hearings upon which the award was based, before the Commission. The matter was submitted for decision, and on July 15, 1925, an order was filed, reciting that, "Good cause appearing therefor, it is ordered that payments under findings and award be terminated as of June 15, 1925."

On August 13, 1925, the respondent employee filed a petition for rehearing, alleging that: "The order terminating payments under findings and award *is incorrect on the facts of the case;* that the medical reports, as he is informed and believes, show that while there is an arthritis of the hip joint, that that arthritis was not an infectious arthritis but was an arthritis caused, exacerbated and increased by reason of his injury. And in support of his condition your petitioner is filing report of Dr. H. H. Markel, who treated your petitioner long prior to the examination made by Dr. Gillis of Los Angeles, and has since made examination and report."

The accompanying report of Dr. Markel stated in part: "In my opinion Mr. Spanovich is still suffering from the effects of the injury which he originally sustained in 1922. At that time he tore loose the left sacroiliac joint, which has, in my opinion, never been properly treated." A rehearing was granted, and on December 8, 1925, and January 14, 1926, oral and documentary evidence, including the testimony of Spanovich, was received. The Commission thereupon prepared and filed findings which recited that the period of temporary partial disability as found in the prior decision continued up to and including the eighth day of August, 1924; "that the injury, the subject-matter of the proceeding, also caused temporary total disability, in view of the conditions of the open labor market, continuing from August 28, 1924, indefinitely entitling the employee to $17.29 a week during said time. Amount accrued to January 14, 1926 (72 weeks) is $1244.88. On account thereof defendant has paid weekly indemnity at the rate of $8.65 a week up to and including June 15, 1925 (41 4/7 weeks) amounting to $359.59, balance due as of said date, January 14, 1926, $885.29." A supplemental award was accordingly made in the sum of $885.29, payable forthwith, and "the further sum of $17.29 a week beginning with the 15th day of January, 1926, and continuing thereafter until the termination of the disability or the further order of this commission."

[1] The petitioner contends that the Commission was without jurisdiction to grant the rehearing, for the reason that the petition therefor did not specify, as required by section 65a of the Industrial Accident, Insurance and Safety

Act [Stats. 1917, p. 875], either, "3. That the evidence does not justify the findings of fact"; "4. That the applicant has discovered new evidence material to him, which he could not, with reasonable diligence, have discovered and produced at the hearing"; or, "5. That the findings of fact do not support the order, decision or award."

It should be noted at the outset that the employee did not petition for rehearing upon the ground of newly discovered evidence. He demanded such rehearing upon the ground that "the order terminating payments under findings and award is incorrect on the facts of the case," and this we think was amply sufficient to state the sole ground upon which a rehearing could be asked, for the reason that *no findings of fact were filed,* and the order was obviously *contrary to the uncontradicted evidence contained in the* record. It is unnecessary to cite authorities for the rule that pleadings in civil actions need not be couched in the exact language of the statute provided sufficient facts be shown to bring them within its plain intent. The petition for rehearing specifically alleged, further, "that the medical reports, as he is informed and believes, shows that while there is an arthritis of the hip joint, that that arthritis was not an infectious arthritis but was an arthritis caused, exacerbated and increased by reason of his injury." In granting the rehearing by order dated September 3, 1925, the Commission accepted the petition therefor as a sufficient compliance with the third subdivision of section 65, above quoted, recited the fact that an operation had previously been ordered, including the treatment suggested by Dr. Markel, and directed "the defendant having neglected to furnish said medical and surgical care, that applicant is entitled to secure said medical and surgical care from any competent physician and surgeon of his own selection, and that defendant will be liable for the reasonable value of said medical care, together with full compensation for the period of total disability caused by said medical care." The defendant, petitioner herein, sought a rehearing upon this latter order, which was denied.

In view of the fact that the petitioner failed to obey the order of the Commission in the first instance, and no findings were filed with the order terminating payments, we think the petition for rehearing was sufficient, and that the Commission acted within its jurisdiction in granting it.

[2] The second point presented by petitioner is that the Commission acted in excess of its jurisdiction in awarding upon rehearing an "increased compensation" over that originally fixed, without evidence tending to show any increase of disability as required by section 20d of the act in question. We think that under the circumstances presented an increase of the award was authorized. The finding supporting the first order was that the employee had sustained a permanent partial disability, and for this he was awarded $8.65 per week, and the employer was required to furnish treatments and care of a physician, including a necessary operation. The finding upon which the supplemental order was based, and which finding resulted from the taking of additional evidence concerning the then condition of the employee, the unsuccessful attempts to work since the making of the first order, and the failure of the employer to furnish the treatment as required, was that the employee was then under a temporary total disability. With this change in the condition of the employee it was entirely proper and obviously necessary that the Commis- sion should allow a greater compensation than before, and the amount was therefore increased to $17.29 per week. It is quite possible that the failure of the employer to supply the treatments at first required was in part or wholly responsible for the change in the condition of the employee for the worse. But, without regard to the cause of the change, it is enough that conditions were so altered as to justify, in the opinion of the Commission, the increased compensation. As was said in *National Engineering Corp.* v. *Industrial Acc. Com.*, 193 Cal. 422, 427 [225 Pac. 2], having reopened the case, the Commission had jurisdiction "to take further testimony and make such disposition of the matter as should be warranted by the facts developed on such re-examination." [3] The court is not concerned with the process of reasoning whereby the Industrial Accident Commission may arrive at its conclusions. So long as it shall act within its jurisdiction, and its award is not unreasonable, it must be affirmed. "The underlying principle upon which the Workmen's Compensation Act rests is, as its title indicates, the providing of compensation to an employee for injuries resulting from its employment. It

emanates from the economic thought that personal injury losses incident to an industry are a part of the costs of production to be borne, just as the depreciation and replacement of a machine is borne, by the industry itself, which compensation will be included in the cost of the product of the industry. (*Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686 [151 Pac. 398].)'' (*Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33, 46 [210 Pac. 410].) The losses incident to the industry in the instant case consisted of the expenses of sustenance of the injured employee, and of medical and surgical treatment. We cannot say that the method of compensation or the amount as determined by the Commission was in excess of its jurisdiction.

[4] The petitioner asserts that the original award was so uncertain as to the amount of allowance for the operation, the services to be performed, and to whom it should be paid, that it was unenforceable. Dr. Markel testified that he would favor an operation; ''immobilization, putting a bone graft across the sacro-iliac joint, known as the Smith-Peterson operation''; ''It takes a good many months after such an operation, but it ought to give him a cure. If, however, the sacralized transverse processes were found to be absolutely at fault, they could be cut off.'' The original award directed that petitioner furnish the applicant with further treatment ''as indicated in the testimony of Dr. H. H. Markel.'' The expenses of such an operation could not, perhaps, be determined in advance, but the procedure in such cases was outlined in *Grand Union Hotel* v. *Industrial Acc. Com.*, 67 Cal. App. 123, 125 [226 Pac. 948]. In that case the operation had not been performed at the time of the hearing, but it was stipulated that the employer would defray the expense if finally determined to be liable therefor. The employee was compelled to enter a hospital on his own account, and though the operation bills for medical services were submitted to the employer, he declined to pay them. A hearing was thereupon called, evidence introduced, and an order allowing supplemental medical expenses was made, which was affirmed. The reasonable cost of the operation need not, in the instant case, have been fixed in advance, nor was it necessary that the name of the hospital be de-

termined at the time of the first hearing, as a condition precedent to the making of an award. The award was not, therefore, *functus officio* because this was not done.

[5] It is further contended that the decision of the Commission was void because there was no evidence tending to support the finding that in view of the conditions of the open labor market the employee's injury caused temporary total disability continuing from August 28, 1924, indefinitely. As we have seen, even granting petitioner the most favorable view of the question by accepting the report of Dr. Gillis, who intimated in substance that, although the employee was incapacitated, some sort of employment might enable him to forget his distress, it appears therefrom that Spanovich was utterly unable to compete in the open labor market for any kind or means of livelihood. The inevitable conclusion is that he was, at least temporarily, totally disabled.

[6] Another contention advanced by petitioner is that the finding of temporary total disability from August 28, 1924, indefinitely, is inconsistent with the original finding of temporary partial disability from September 30, 1923, indefinitely. This argument furnishes its own answer, since admittedly the Commission decided that the temporary disability was indefinite. At the time of the first award it appeared that the employee was temporarily partially disabled, but such finding was, of necessity, based upon the showing as of that date, in anticipation of an operation. Upon rehearing it appeared without conflict that no operation had been performed, that the employee had been unable to do any remunerative work, and was therefore totally disabled from August 28, 1924—a year later than the showing of partial disability. [7] We think the question is appropriately met by the language used in *Grand Union Hotel* v. *Industrial Acc. Com.*, 67 Cal. App. 123, 128 [226 Pac. 948] : "It is true, of course, that supplemental awards may not be used for the purpose of correcting errors in the original award (*Georgia Casualty Co.* v. *Industrial Acc. Com.* [177 Cal. 289, 170 Pac. 225], *supra; McBride* v. *Industrial Acc. Com.* [182 Cal. 407, 187 Pac. 1050], *supra*), and if the expenses in dispute here had been incurred prior to the submission of the case to the Industrial Accident Commission, but, nevertheless, through error, said

78 Cal. App.—38

Commission had failed to make an allowance therefor, or if the applicant had neglected to prove such expenses before the Commission, although they had occurred prior to the date of the hearing, no supplemental award could have accomplished the purpose of correcting the error. But in the present case, the decision having reference only to the facts as they existed at the date of the submission of the case to the Industrial Accident Commission, the expenses incurred later and the conditions which occurred later making such expenses necessary constituted such a change in the situation of the injured man as to empower the Commission to do justice to him under the provisions of section 20 (d) of the act. Any other construction of the act would be contrary to its spirit and would result in hardship and injustice to an applicant without fault on his part."

[8] Petitioner incidentally asserts that past errors were attempted to be corrected in the instant case, but there is no evidence of the Commission having committed, or attempted to correct, error. Admitting for the sake of argument that the order terminating payments was erroneous because the whole record was not considered, yet the award under consideration was not made to rectify error, but was granted pursuant to rehearing. It was not supplemental to the order terminating payments. The order itself was subject to a petition for rehearing during the period of twenty days.

The writ is discharged and the award affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 2, 1926, and a petition by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 2, 1926.