[L. A. No. 10200.   In Bank.—November 14, 1927.]

COUNTY OF LOS ANGELES, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, and PHILIP NELSON, Respondents.

[1] WORKMEN'S COMPENSATION ACT — TOTAL TEMPORARY DISABILITY — FINDING OF CONTINUANCE OF — SUFFICIENCY OF EVIDENCE. — In this proceeding in *certiorari* to review an order of the Industrial Accident Commission awarding compensation for personal injuries, it is held that the evidence was sufficient to justify the finding of the Commission that total temporary disability of the employee had not terminated.

[2] ID.—INJURIES TO EYE AND FACE—APPEARANCE—SURGICAL RELIEF. Where the present appearance of an employee who received an injury to his eye and face would be a decided handicap to his obtaining employment in an open market, and proposed surgical operations were to give him a more presentable appearance, conceding that the major object of the proposed surgical operations was for "cosmetic purposes" only, the Industrial Accident Commission acted within its statutory powers in ordering the treatment at the expense of the employer.

[3] ID. — ORDER FOR SURGICAL TREATMENT — NOTICE — FINDINGS. — Where the Industrial Accident Commission ordered certain surgical treatment recommended by surgeons of skill to the employee, at

———

3.   See 27 Cal. Jur. 528.

the expense of the employer, and further ordered that if the employer did not furnish the treatment within a reasonable time the employee might engage his own surgeon at the expense of the employer, objection that the order is one to pay bills covering operative treatment by private parties prior to a finding upon notice, as provided in section 10 of the Workmen's Compensation Act, cannot be maintained.

[4] Id. — Repeated Surgical Operations — Employment of Private Surgeon — Liability of Employer. — It being shown that, after twenty-two surgical operations on an employee, the employer admitted its inability to further relieve the employee from the effects of his injuries, the employer may be made liable for the necessary expense connected with operations performed by a surgeon of admitted skill employed by the employee, the operations having been successful.

[5] Id. — Transcript of Hearing — Right of Employer to — Relief.— The right of an employer to have the Industrial Accident Commission furnish him a transcript of the hearing before the Commission cannot be determined and enforced on a petition for a writ to review the order of the Commission in the matter of an award for injuries to the employee.

(1) Workmen's Compensation Acts, C. J., p. 132, n. 76.    (2) Workmen's Compensation Acts, C. J., p. 101, n. 77.    (3) Workmen's Compensation Acts, C. J., p. 101, n. 81.    (5) Workmen's Compensation Acts, C. J., p. 120, n. 13.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission awarding compensation or personal injuries.    Award affirmed.

The facts are stated in the opinion of the court.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, of Los Angeles County, for Petitioner.

G. C. Faulkner for Respondent Industrial Accident Commission.

THE COURT.—This proceeding comes before this court after decision by the district court of appeal, second district, first division, Mr. Justice Houser having written the opinion for that court.    We are in accord with said

4,    See 27 Cal. Jur. 526, 530.

opinion in many respects and adopt and approve the following portion thereof:

"Certiorari.

"The purpose of this proceeding is to review certain findings, orders and the award made in pursuance of an application to the respondent Commission by an employee for adjustment of compensation as a result of injuries sustained by him while acting within the scope of his employment with the petitioner herein.

"From the record it appears that the employee, who was engaged as a 'spudder' on a pile driver operated by the petitioner, suffered an injury by reason of a large splinter which 'flew off a pile, striking him, proximately causing injury to the right eye and cheek'; that in due course, on findings of temporary total disability, an award of continuing compensation and an order for future medical and surgical treatment of the employee were made by the Industrial Accident Commission, the respondent herein; that approximately twenty months thereafter, on the ground that the disability of the employee had become permanent, the employer (petitioner herein) filed an application with respondent Commission for the termination of the continuing award to the employee, together with a request that the percentage of such permanent disability be fixed and determined by said Commission;—which petition finally resulted in an order by said Commission denying the employer's application that the award as theretofore made and then in force as to continuing compensation to said employee be terminated, at the same time ordering further medical and surgical treatment of the employee.

"The findings made by the Commission, together with its order last mentioned, were as follows:

' "That the temporary total disability resulting from the injury sustained by the employee on February 7, 1923, has not yet terminated;

" 'That further operative treatment as recommended in the report of Dr. George W. Pierce dated April 21, 1926, should be furnished to the employee at the expense of the defendant County of Los Angeles. . . .

" 'It is ordered that the defendant's (petitioner's) said petition to terminate indemnity be and it hereby is denied.

" 'It is further ordered that the said defendant shall furnish to the applicant, within a reasonable time, the further operative treatment recommended in the report of Dr. George W. Pierce dated April 21, 1926.

" 'It is further ordered that should said defendant neglect or refuse to furnish such treatment within a reasonable time from date hereof, the applicant shall be entitled to secure such treatment from his own physician, and said defendant County of Los Angeles will be liable for the reasonable expense thereof, to be determined upon the filing of itemized bills, in duplicate, and the approval of the Medical Department of this Commission.'

"The first point presented by petitioner is that the Commission acted in excess of its powers in making its finding in effect that total temporary disability of the employee had not terminated. . . . "

The employee Nelson testified as to his condition since sustaining the injury, and particularly as to his condition at the time of the hearing before the Commission. He in effect testified that he had not returned to work and that he had been unable to do any work since his injury; that he had visited his brother at his ranch in Minnesota and while there had assisted in the light chores when he felt well enough, such as driving the cattle and horses into the yard. As to having difficulty with his eye at the time he said: "Yes, lots of it, I cannot get the distance with it." Doctor Pierce testified before the Commission that an "Examination of the mouth shows sinus opening above the right upper first molar, apparently from antrum. No sulcus behind the lower lid to hold artificial eye. There is a purulent discharge into the mouth." [1] There was undoubtedly sufficient evidence before the Commission to justify the finding that total temporary disability of the employee had not terminated.

We also adopt and approve the further portion of the opinion of the district court of appeal:

"The next finding and order of the Commission to which petitioner directs attention is that wherein in effect it was found and ordered that the employer furnish to the employee 'the further operative treatment recommended in the report of Dr. George W. Pierce'; furthermore, that should the employer neglect or refuse to furnish such treat-

ment within a reasonable time after the date of the order, at the expense of the employer, the employee should be entitled to secure such treatment from his own physician.

"At the time the report of Dr. Pierce was made it appears therefrom that the condition of the employee was as follows:

" 'Present condition: Numerous scars over the entire right cheek; lower border of orbit, sunken, apparently fracture. There is a paresia of the upper lid. The palpebral fissure is one-half inch lower than on other side. There is some voluntary contraction in the orbicularis palpebrarum. The upper lid overlaps the lower at the outer canthus and is distorted at this point by adhesions. There is some loss of tissue of the lower lid with irregularity.

" 'Examination of the mouth shows sinus opening above the right upper first molar, apparently from antrum. No sulcus behind the lower lid to hold artificial eye. There is a purulent discharge from the orbit. There is also a continuous purulent discharge into the mouth. There is some loss of periorbital fat.'

"The operative treatment recommended by Dr. Pierce to which reference was made in the order by the Commission was indicated in the following language:

" 'There are two different stages of repair necessary in this case. First—is the deepening of the socket which could be done in one operation by the method of epithelial inlay and which would not require over one week to ten days and then the lower lid would require some plastic operation to complete the borders while the upper lid could be freed and raised up. These operations would not require any great length of time. The second stage would be the cleaning out of the antrum and closure of the sinus. I cannot state just how long this would take.

" 'By plastic operation, however, the appearance of the patient could be markedly improved and he would wear an artificial eye.'

"It is the contention of petitioner that the proposed operations and treatment recommended by Dr. Pierce were for cosmetic effect only, and that the Commission was without jurisdiction to make the order of which complaint was made. But an inspection of the report discloses the fact that in part at least the purpose of the recommended treatment was to relieve the patient from the condition arising

primarily from the two 'purulent discharges' referred to in the report, together with the added feature of 'cleaning out the antrum and closure of the sinus.' To that extent, therefore, it is clear that the Commission was acting within its statutory powers. The principal attack of petitioner, however, is directed toward that part of the recommendation with reference to the other steps leading to the conclusion that 'the appearance of the patient could be markedly improved and he would wear an artificial eye.'

"To put the position assumed by petitioner perhaps more plainly, it is that petitioner objects to any operation, the expense of which must be borne by it, for the ultimate purpose of so building up the tissue and bony structure surrounding the orbital cavity that the employee may be provided with and wear an artificial eye.

"Section 9 [a] of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831, as variously amended) provides that:

" 'Where liability for compensation under this act exists, such compensation shall be furnished or paid by the employer and be as provided in the following schedule:

" ' (a) Such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches and apparatus, including artificial members, as may reasonably be required to cure and relieve from the effects of the injury, . . . '

"Respondent directs particular attention to the words 'as may reasonably be required to cure and *relieve* from the effects of the injury.' The photographs of the employee, presented at the time of the hearing before the referee, together with the report made by Dr. Pierce (hereinbefore set forth) regarding the condition of the employee shortly preceding the time of the hearing, indicate a deplorable situation so far as the probability of the employee being able to secure employment was concerned.

"On the part of the employer, the purpose of any surgical attempt in connection with an injury received by an employee is to restore him to as nearly a natural and normal condition as may be possible or practicable, to the end that his earning power by reason of his injury may be diminished to the least possible extent. To illustrate: If by accident arising from his employment the foot of a day laborer

should be so crushed that by no known surgical skill could it be made useful as a member of his body, the probable medical course and practice would indicate the amputation of the foot. In due course thereafter it is clear that an artificial foot would greatly aid the employee in bringing about a restoration to a considerable extent of his earning power. Could it be doubted that the language of the statute which requires the furnishing by the employer of such surgical treatment, 'including artificial members' as may be required to 'cure and relieve from the effects of the injury,' would be applicable? In the instant case, that the present appearance of the employee would be a decided handicap to his obtaining employment 'in an open labor market' is obvious. The evident purpose of some of the proposed surgical operations on the employee is to give him a more presentable personal appearance. In his present condition, by reason of his limitations and the natural competition in securing employment, it might, and in all probability would, be extremely difficult for the employee to secure even such work as he is capable of doing. If successful, the result of the proposed surgical operations would place the employee not only in a position where he could secure better and more remunerative employment than at this time he may command, but his improved personal appearance would assist in enabling him to retain such position. The probabilities are that the morale of the employee would be bettered and his self-respect and appreciation of his good-workmanship qualities be increased—all tending toward a rehabilitation and restoration of the earning powers of the employee as of the date of the injury which he sustained. The principle of the question here under consideration is treated to some extent in the case of *New York Central R. R. Co.* v. *Bianc,* 250 U. S. 596 [63 L. Ed. 1161, 40 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes Supp.] where, among other things, it is said:

" 'Even were impairment of earning power the sole justification for imposing compulsory payment of workmen's compensation upon the employer in such cases, it would be sufficient answer to the present contention to say that a serious disfigurement of the face or head reasonably may be regarded as having a direct relation to the injured per-

son's earning power, irrespective of its effect upon his mere capacity for work.

" 'Under ordinary conditions of life, a serious and unnatural disfigurement of the face or head very probably may have a harmful effect upon the ability of the injured person to obtain or retain employment. Laying aside exceptional cases, which we must assume will be fairly dealt with in the proper and equitable administration of the act, such a disfigurement may render one repulsive or offensive to the sight, displeasing, or at least less pleasing, to the employer, to fellow employees, and to patrons or customers. (See *Ball* v. *William Hunt & Sons*, A. C. 496, 81 L. J. K. B., N. S., 782, 106 L. T., N. S., 911, 28 Times L. R. 428, 56 Sol. Jo. 550, 5 B. W. C. C. 459.)'

[2] "This court is therefore led to the conclusion that even though conceding that the major object of the proposed surgical operations on the employee may be for 'cosmetic purposes' only, the respondent Commission in making its order therefor was not acting in excess of its statutory powers.

[3] "It is also objected by petitioner that 'the Industrial Accident Commission acted without, or in excess of, its powers in ordering petitioner to pay bills covering operative treatment rendered Philip Nelson by private parties prior to a finding upon notice as provided in section 10 of the Workmen's Compensation, Insurance and Safety Act, that petitioner's approved hospital was inadequate.' From an examination of the order by the Commission (hereinbefore set forth) relating to petitioner's objection, it will be noted, not that the Commission has arbitrarily ordered the employer to pay bills covering operative treatment rendered to the employee prior to a finding that the hospital of petitioner was inadequate, but that in fact, the order was to the effect that the employer furnish the proposed operative treatment within a reasonable time, or on its neglect or refusal so to do, the employee 'be entitled to secure such treatment from his own physician' at the expense of the employer. The point made by petitioner, therefore, is without application to the facts herein. [4] It may, however, be said that the record herein clearly discloses the fact that after twenty-two surgical operations on the employee, the employer admitted its inability to further

relieve the employee from the effect of his injuries. Dr. Pierce, the evidence of whose surgical skill was admitted, promised the desired relief. In such circumstances, assuming the successful outcome of the proposed surgical operations, the case of *Union Iron Works* v. *Industrial Accident Commission,* 190 Cal. 33 [210 Pac. 410], is authority for the principle that the employer may be made liable for the necessary expense connected therewith.

[5] ''Finally, it is urged by petitioner that the respondent Commission acted in excess of its powers in refusing to furnish petitioner with a transcript of the hearing before the Commission.

''Without deciding whether in ordinary circumstances, upon payment by the petitioner of the fees prescribed by statute therefor, it became the duty of the Commission to furnish such transcript, this court is of the opinion that the relief sought is one that cannot be considered in a petition for writ of review. . . . ''

The award is affirmed.

Rehearing denied.