[Crim. No. 3772. Fourth Dist., Div. One. May 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN RAMSEY et al., Defendants and Appellants.

**COUNSEL**

J. Perry Langford and Peter B. Clarke, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BROWN (Gerald), P. J.**—Defendants John Ramsey and Jeanne Ramsey, husband and wife, appeal their jury-tried convictions of manslaughter (Pen. Code, § 192) of their 130-day-old daughter Bessie Ann. They were sentenced to prison.

We appointed a single counsel for both defendants on appeal. After briefs were filed, on our own motion we vacated the appointment and appointed separate counsel for each defendant.

Both defendants were represented below by the same attorney, the public defender.

The defendants and their six children, the oldest being eight, were an itinerant family. Bessie Ann was born in Madera, California, September 6, 1968. She was kept in the hospital 5 days longer than her mother because of internal bleeding. On October 30, 1968, Bessie Ann was taken to the Palo Verde Hospital in Blythe, California, suffering from convulsions, being unconscious, with head, arms and legs twitching. She weighed 7 pounds, 9¾ ounces. Dr. Berry administered injections to suppress the convulsions. He felt the Riverside General Hospital could give expert medical attention not available in Blythe, and he exhorted the mother to take the child to Riverside, a distance of about 170 miles, most of it through desert.

En route to Riverside, the Ramseys' car broke down near or in Brawley. We are not told why defendants went this circuitous southern route. But without transportation, they remained in Brawley where Mr. Ramsey sought and obtained employment, working long night hours.

Mrs. Ramsey took Bessie Ann to the Pioneer Memorial Hospital in Brawley on January 14, 1969, about 7:45 p.m., where, despite medical aid, the child expired an hour later. Her blanket and diaper smelled strongly of urine. The autopsy physician reported a 5½-pound child, extremely emaciated, without food in the stomach and intestines, indicating Bessie Ann died of malnutrition due to starvation; she had not taken food for 24 to 48 hours, the starvation process had been going on for more than 48 hours and probably had been going on for weeks.

Mrs. Ramsey told an officer, who had followed the car speeding to the hospital, Bessie had been sick about a week; Mr. Ramsey had been unable to take the baby to a doctor, all her children had been small under age one; and she did not call the police to help because they might think she had not been feeding the baby.

About 11 p.m., on the date of the child's death, Investigator Sears and two other Imperial County Sheriff's deputies, waited at Ramseys' residence. When the Ramseys arrived, Officer Sears said he wanted to talk to them about information for the death certificate. Mrs. Ramsey told the amount of food Bessie Ann ate the afternoon of her death, a jar of baby food and 3 or 4 bottles of milk. Officer Sears asked for and was given permission to see the entire house and take pictures. The children's bedroom had a strong urine odor. Officer Sears did not *Miranda* warn defendants. This was done two days later by Officer Santos who said they were agreeable to answering his questions. His testimony is invariably what "they" said.

Mrs. Ramsey did not testify. Mr. Ramsey did.

Both Jeanne Ramsey and John Ramsey contend they were denied effective representation by counsel because the same public defender represented both of them and a conflict existed in dual representation. Although neither defendant requested separate counsel below, the record does not show either of them was advised of the right to separate counsel if a conflict existed. Under these circumstances we may not imply from their silence a waiver of the right (*People* v. *Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106]).

Counsel for John Ramsey argues the defense of a husband and wife for the negligent homicide of their child is loaded with potential conflict. While her factual defense may be limited to establishing she, in fact, cared for the child, his defense could additionally consist of his reasonable attempts to provide for the child and a reasonable belief his wife carried out her duties. John Ramsey did testify he worked long hours and had little time to be with his family, as he slept much of the time while home. To effectively present John's additional defense would be to weigh the scales more heavily on Jeanne's culpability.

The Attorney General responds by arguing all hope for success in this case depended upon a common defense both defendants interacted in a way to give proper care to the victim. Such a limitation on hopes for success, however, may well have been fostered by the dual representation.

The potential for conflict appears great based upon the husband-wife relationship and the possibility of domination or martyrdom by one or the other. This potential at least should be explored by the defendants with knowledge of their right to separate representation if there is a conflict.

A potential conflict also may arise over the consideration of who, if either, should testify. Here, John Ramsey did testify. Jeanne Ramsey's counsel cites, as prejudicial, the following question by joint counsel and John's response:

"Q. Mr. Ramsey, would it be correct to say that you relied upon your wife to act like any other mother, to take care of the children?

"A. Yes, I do. I figured it was her place."

When separate counsel have not been appointed and where, on appeal, defendants show a conflict of interest between them at their trial, their convictions must be reversed unless the prosecution can show the prejudice, which a conflict necessarily raises, was harmless beyond a reasonable doubt (*People* v. *Thompson,* 13 Cal.App.3d 47, 54 [91 Cal.Rptr. 341]).

In examining the record we look not only for manifestations of actual conflict, but for areas of potential conflict. This is because the appointment of a single counsel may mask the conflicts between codefendants and it makes no difference whether the conflict may have been apparent to the participants at the time of trial or not (*People* v. *Thompson, supra,* 13 Cal.App.3d 47, 55-56).

Both actual and potential conflicts of interest are reflected in this record. Both John and Jeanne Ramsey were entitled to trial counsel unfettered by the limitaions of representing the two of them.

Because the joint representation of defendants' conflicting interests compels a reversal, we need not examine their contentions their counsel was inadequate.

Serious questions are raised concerning the instructions given by the court. It is apparent, with separate counsel, the nature of the admissible evidence may be quite different on retrial. There may or may not be a trial severance depending upon whether a motion is made and what showing is made supporting severance. A timely request for psychiatric and psychological examinations may be favorably received (a request for such examination was made on the first day of trial and denied when John refused to waive time—another example of conflict). Because of the likelihood the procedural and factual posture of this case may be different after retrial, we are not inclined to deal with the claims of instructional error in great detail.

*People* v. *Stuart,* 47 Cal.2d 167, 173 [302 P.2d 5, 55 A.L.R.2d 705] requires a misdemeanor, to support a manslaughter conviction, to be one dangerous to human life or safety and be committed with criminal intent or criminal negligence, as required by Penal Code section 20. The court here gave basic instructions that involuntary manslaughter involved an unlawful killing without malice aforethought during the commission of a misdemeanor which is inherently dangerous to human life or safety and, further, the unlawful act or omission must be committed with criminal intent or criminal negligence. The court went on, however, to instruct on misdemeanors which are not inherently dangerous to life or safety (e.g., Pen. Code, §§ 270, 272). We do not approve these following instructions nor do we approve the failure of the court to instruct on the necessity of establishing the corpus delicti independent of the defendants' admissions.

We are sure court and counsel on retrial will be considerably aided in

formulating instructions by the capable work done by both counsel on appeal. We delve no further into the subject for the reasons we have stated.

Judgments reversed.

Coughlin, J., and Whelan, J., concurred.

A petition for a rehearing was denied June 4, 1971, and respondent's petition for a hearing by the Supreme Court was denied August 4, 1971.