[No. S045352. Mar. 21, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
GUY V. WELLS, Defendant and Appellant.

## Counsel

Mary G. Swift, under appointment by the Supreme Court, for Defendant and Appellant.

Jaffe, Trutanich, Scatena & Blum, Fred M. Blum and R. Allan Payne as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen, Donna B. Chew and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

BAXTER, J.—Subdivision (c)(1) of Penal Code section 192[1] (section 192(c)(1)) defines one of the three kinds of vehicular manslaughter described in section 192 as "driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." In this case we are asked to decide if the "unlawful act" to which the statute refers must be an offense that is inherently dangerous to human life or safety, and if so, whether exceeding the maximum speed limit is such an unlawful act.

---

[1]All statutory references are to the Penal Code unless otherwise noted.

The Court of Appeal held that the killing "in the commission of an unlawful act, not amounting to felony" element of vehicular manslaughter in section 192(c)(1) requires that the unlawful act be an offense that is inherently dangerous, and reversed the conviction of defendant because the trial court instructions had permitted conviction on a finding that the death occurred as the result of defendant's commission of an offense that was not inherently dangerous.

Contrary to the understanding of the Court of Appeal, however, we conclude that the offense which constitutes the "unlawful act" need not be an inherently dangerous misdemeanor or infraction.[2] Rather, to be an "unlawful act" within the meaning of section 192(c)(1), the offense must be dangerous under the circumstances of its commission. An unlawful act committed with gross negligence would necessarily be so. We therefore reverse the judgment of the Court of Appeal.

I

*Background*

Defendant Guy Wells was convicted by a jury in the Napa County Superior Court of violating section 192(c)(1) while driving on the Petrified Forest Road outside Calistoga on January 10, 1992. The evidence established that defendant's car, which at times had been traveling at speeds estimated as being between 50 and 80 miles per hour on a curving, hilly road, struck another car that had slowed to turn into a driveway. Defendant lost control of his car, which began to skid as it rounded a curve. Defendant's out-of-control car slid against the victims' car, spinning it around. The driver of the second car was injured; a passenger was killed. Prior to the accident, defendant's car had passed other vehicles in places where passing

---

[2]An "unlawful act, not amounting to a felony" as that phrase is used in section 192 may be either a misdemeanor or an infraction. Our reference to "misdemeanor" when describing the offenses encompassed within the descriptive term "unlawful act, not amounting to a felony" in section 192, includes infractions.

The parties refer to violations of the Vehicle Code in their argument on the proper construction of section 192(c). Section 192(c)(1) is not expressly limited to acts which violate the Vehicle Code, but we assume, as do the parties, that the unlawful acts to which it applies are violations of the Vehicle Code or a statute or ordinance governing the manner in which a vehicle is operated. A death which is proximately caused by the commission of other misdemeanors is subject to section 192, subdivision (b) even if the misdemeanor is committed while the defendant is driving a vehicle. Therefore, if death results from brandishing a weapon in violation of section 417 any prosecution would be under section 192, subdivision (b), not section 192(c), even if the act was committed by a person who was driving a vehicle. This is consistent with the legislative stipulation that section 192, subdivision (b) "shall not apply to acts committed in the driving of a vehicle" and section 192(c) which applies to "driving a vehicle in the commission of" an unlawful or a lawful act.

was unsafe, crossing double yellow lines to do so, and had almost caused a head-on collision while passing a car about 3.8 miles from the accident scene.

The trial court instructed the jury that several Vehicle Code violations could constitute the "unlawful act" element of section 192(c)(1). Those were violation of Vehicle Code sections 21650 (failure to keep to the right side of a roadway), 21662 (failure to obey "mountain roadway" rules), 22107 (unsafe turning movement), 22349 (failure to obey maximum speed limit), 22350 (failure to obey basic speed law), and 23103 (reckless driving). The trial court instructed the jury in the language of CALJIC No. 8.90 that an unlawful act is one inherently dangerous to human life or safety, and also told the jurors that violation of each of those misdemeanors and infractions was an act inherently dangerous to human life and safety.

On appeal, relying principally on *People* v. *Stuart* (1956) 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705] (*Stuart*) and *People* v. *Burroughs* (1984) 35 Cal.3d 824, 829 [201 Cal.Rptr. 319, 678 P.2d 894], a felony-murder case, defendant contended that the court had erred by including violation of Vehicle Code section 22349[3] among the offenses that would support conviction under section 192(c)(1) because the failure to obey the maximum speed limit was not, in the abstract, an offense inherently dangerous to human life. Therefore, he argued, because the record did not establish that the jury had convicted him on a proper theory, reversal of the conviction was required under *People* v. *Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45].

The Court of Appeal rejected the People's argument that the unlawful act element of section 192(c)(1) need not be an inherently dangerous misdemeanor or infraction. The court observed that the phrase "commission of an unlawful act" was also used in section 192, subdivision (b) (section 192(b)), which codifies the traditional common law form of involuntary manslaughter, as the predicate for finding that a homicide committed without malice was involuntary manslaughter. When that phrase was construed in *Stuart*, this court had stated that to support an involuntary manslaughter conviction under section 192(b) the "unlawful act" must be dangerous to human life and safety and committed with criminal intent or criminal negligence pursuant to section 20. (*Stuart, supra,* 47 Cal.2d at p. 173.) Although *Stuart* had said only that the unlawful act must be dangerous to human life and safety, the Court of Appeal understood the holding of *Stuart* to be that the underlying

---

[3]Vehicle Code section 22349 read at the time of defendant's violation: "Except as otherwise provided in Section 22356, no person shall drive a vehicle upon a highway at a speed greater than 55 miles per hour."

misdemeanor offense must be one that is inherently dangerous in the abstract. The court then concluded that the same meaning must be ascribed to the term "unlawful act" as used in section 192(c)(1). This, the court reasoned, would be consistent with *People* v. *Wright* (1976) 60 Cal.App.3d 6 [131 Cal.Rptr. 311] and *People* v. *Ramsey* (1971) 17 Cal.App.3d 731 [95 Cal.Rptr. 231], as well as this court's statement in *People* v. *Williams* (1975) 13 Cal.3d 559, 562 [119 Cal.Rptr. 210, 531 P.2d 778], that the trial court must instruct on "inherently-dangerous-to-human-life-misdemeanors."[4]

This court granted the People's petition for review to consider whether the Court of Appeal properly construed section 192(c)(1).

## II

### *Meaning of "Unlawful Act"*

The People argue that the unlawful act element of both section 192(b) and section 192(c) may be any misdemeanor or infraction and that the Court of Appeal erred in its reading of *Stuart*. The People observe that the Court of Appeal's construction of section 192(c)(1) overlooks the relationship between section 192(c)(1) and the alternate type of vehicular manslaughter defined in section 192(c)(2)[5] and leads to anomalous results that could not have been intended by the Legislature. As construed by the Court of Appeal, the act of extremely reckless and factually dangerous driving which proximately results in a death is not an unlawful act under section 192(c)(1) if the grossly negligent conduct that caused the death occurred in the commission of a misdemeanor violation of the Vehicle Code, but that misdemeanor was not inherently dangerous.

---

[4]*People* v. *Williams*, *supra*, involved a conviction under section 192(b). No *Stuart* issue was raised or decided in either *People* v. *Williams*, *supra*, 13 Cal.3d 559, 562, where we held that the trial court erred in failing to instruct the jury on which conduct of the defendant could constitute an inherently dangerous misdemeanor, or *People* v. *Ramsey*, *supra*, 17 Cal.App.3d 731. A case is not authority for an issue neither raised nor considered. (*People* v. *Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580]; *McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

[5]Section 192(c)(2) defines vehicular manslaughter in language identical to that of section 192(c)(1) with the exception that the act is without gross negligence. It provides that vehicular manslaughter is also "driving a vehicle in the commission of an unlawful act, not amounting to a felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." (§ 192(c)(2).)

The penalty for violation of section 192(c)(1) is either imprisonment in the county jail for not more than one year or by imprisonment in the state prison for two, four, or six years. Violation of section 192(c)(2) is punishable by imprisonment in the county jail for no more than one year. (§ 193.)

Defendant, as did the Court of Appeal, relies in part on past rulings made in the context of involuntary manslaughter under section 192(b). Section 192(b) defines the traditional, common-law-derived form of involuntary manslaughter as the unlawful killing of a human being without malice "in the commission of an unlawful act, not amounting to felony." Defendant argues that this court held in *Stuart* that the unlawful act to which section 192(b) referred had to be a misdemeanor that was inherently dangerous. Therefore, he reasons, the misdemeanor predicate for conviction under section 192(c)(1) also must be inherently dangerous in the abstract. In his view, the circumstances of the commission of the particular misdemeanor are not a consideration.

Defendant relies also on decisions in which this court restricted operation of the felony-murder rule to inherently dangerous felonies. (See, e.g., *People v. Burroughs, supra,* 35 Cal.3d 824, 829; *People v. Nichols* (1970) 3 Cal.3d 150, 163 [89 Cal.Rptr. 721, 474 P.2d 673]; *People v. Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; *People v. Williams* (1965) 63 Cal.2d 452, 458 [47 Cal.Rptr. 7, 406 P.2d 647]; *People v. Ford* (1964) 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].)

■ The issue in this case is one of statutory construction. The legislative intent underlying section 192(c) must be ascertained and, to the extent the plain language of that section permits, any judicial construction must be consistent with and further that purpose. (Code Civ. Proc., § 1859; *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].) ■ The language of section 192, and our decision in *Stuart* construing identical language in section 192(b), support the People's argument that, when an involuntary manslaughter charge under section 192(c)(1) is based on a theory that the victim's death was caused by the defendant driving a vehicle "in the commission of an unlawful act," the unlawful act element of the offense that must be dangerous to human life or safety is not the misdemeanor itself in the abstract, but the conduct of the defendant in the circumstances in which the violation occurred. To support a conviction of violating section 192(c) the circumstances of the violation, not the offense in the abstract, must be dangerous to human life and safety.

The Court of Appeal recognized that the use of the term "in the commission of an unlawful act, not amounting to felony" in both section 192(b) and section 192(c)(1) reflects legislative intent that the same meaning be accorded the term in each subdivision. However, the Court of Appeal concluded that in *Stuart*, by which it was bound (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]),

this court had held that the "unlawful act not amounting to felony" that caused death must be an inherently dangerous misdemeanor.

*Stuart* was decided after the enactment of the predecessor of present section 192(c)(1), and thus was not considered by the Legislature in drafting that section. Nonetheless, *Stuart* applies, since the use of the same phrase— unlawful act, not amounting to felony—in sections 192(b) and 192(c) suggests that the Legislature intended that the phrase be given the same meaning in both sections. ▮▮▮▮ In construing a statute, unless a contrary intent appears (*Union Iron Wks.* v. *Industrial Acc. Com.* (1922) 190 Cal. 33 [210 P. 410]; *Russ-Field Corp.* v. *Underwriters at Lloyd's* (1958) 164 Cal.App.2d 83 [330 P.2d 432]), the court presumes that the Legislature intended that similar phrases be accorded the same meaning (*Corey* v. *Knight* (1957) 150 Cal.App.2d 671 [310 P.2d 673]), particularly if the terms have been construed by judicial decision. (*Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688 [8 Cal.Rptr. 1, 355 P.2d 905]; *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781 [136 Cal.Rptr. 233].)

▮▮▮▮ On its face, section 192(c)(1) does not include a requirement that the "unlawful act, not amounting to felony" be an offense that is inherently dangerous in the abstract. In *Stuart,* we observed that "[w]ords such as 'unlawful act, not amounting to felony' have been included in most definitions of manslaughter since the time of Blackstone [citations] and even since the time of Lord Hale, 'unlawful act' as it pertains to manslaughter has been interpreted as meaning an act that aside from its unlawfulness was of such a dangerous nature as to justify a conviction of manslaughter if done intentionally or without due caution. [Citations.] To be an unlawful act within the meaning of section 192, therefore, the act in question must be dangerous to human life or safety and meet the conditions of section 20 [i.e., be committed with criminal intent.]" (*Stuart, supra,* 47 Cal.2d 167, 173.)[6]

The Court of Appeal understood *Stuart* to require, for a conviction of any form of involuntary manslaughter under section 192, including vehicular

---

[6]In *Stuart,* the defendant, a pharmacist, was charged with manslaughter for violating former Health and Safety Code section 16280, prohibiting the " 'manufacture, production, preparation, compounding, packing, selling, offering for sale, advertising or keeping for sale within the State of California . . . of any drug or device which is adulterated or misbranded.' " (*Stuart, supra,* 47 Cal.2d 167, 172.) He had filled a prescription for an infant calling for sodium citrate; the bottle labeled sodium citrate actually contained sodium nitrite, which proved fatal to the infant. The defendant was unaware that the bottle was mislabeled: "the undisputed evidence show[ed] conclusively that defendant was morally . . . innocent and that only because of a reasonable mistake or unavoidable accident was the prescription filled with a substance containing sodium nitrite." (*Id.* at p. 171.)

manslaughter, that the defendant commit an unlawful act, i.e., a misdemeanor, that is "inherently dangerous in the abstract." It misunderstood *Stuart.*

In stating that "the act in question must be dangerous to human life or safety and meet the conditions of section 20" (*Stuart, supra,* 47 Cal.2d at p. 173), we did not in *Stuart* require that "the unlawful act, not amounting to felony," constitute an "inherently dangerous act," or be malum in se. Instead, we required that commission of the unlawful act involve criminal culpability, i.e., have been done in a dangerous manner. Thus, we explained that "only if defendant had intentionally or through criminal negligence prepared, compounded, or sold an adulterated or misbranded drug, would his violation . . . be an unlawful act within the meaning of section 192 of the Penal Code." (*Id.* at p. 174.)

Significantly, we cited in *Stuart* several cases in support of our conclusion, some of which involved vehicular manslaughter. (*Stuart, supra,* 47 Cal.2d 167, 173.) The first two cases cited, both from California, involved deaths in the course of violations of the speed laws. (*Ibid.,* citing *People* v. *Mitchell* (1946) 27 Cal.2d 678 [166 P.2d 10] [a person commits an unlawful act within the meaning of section 192 if he violates the speed laws designed to prevent injury] and *People* v. *Pearne* (1897) 118 Cal. 154, 158 [50 P. 376] [reversing conviction of involuntary manslaughter based on the unlawful act of exceeding the speed limit on the ground that "the charge should rest upon the commission of an act done without due caution and circumspection."].) We also cited a Nebraska case, *Thiede* v. *State* (1921) 106 Neb. 48 [182 N.W. 570, 15 A.L.R. 237], which is directly on point here. ■ In *Thiede,* the court held that the mere violation of a speed statute is not an "unlawful" act sufficient to constitute manslaughter if death ensues: "We believe the rule to be that, though the act, made unlawful by statute, is an act merely malum prohibitum and is ordinarily insufficient, still, when such an act is accompanied by negligence or further wrong, so as to be, in its nature, dangerous, or so as to manifest a reckless disregard for the safety of others, then it may be sufficient to supply the wrongful intent essential to criminal homicide, and, when such act results in the death of another, may constitute involuntary manslaughter." (182 N.W. at p. 572.) As *Thiede* shows, an act "in its nature, dangerous" (*ibid.*)—i.e., of a "dangerous nature" (*Stuart, supra,* 47 Cal.2d 167, 173)—is not necessarily an "inherently dangerous act" as defendant contends. Another decision cited, *People* v. *Pavlic* (1924) 227 Mich. 562 [199 N.W. 373, 374, 35 A.L.R. 741], stands for the same principle, i.e., that commission of an unlawful act consisting of a statutory prohibition "will constitute manslaughter if performed *under such circumstances as to supply the intent to do wrong* and inflict some bodily injury."

(Italics added.) The court in *Pavlic* used an example that is in point here: "This is well illustrated in those cases where one kills another while driving an automobile at an unlawful rate of speed. The unlawful act of exceeding the speed limit is not in itself criminal, but if done in a careless manner, in reckless disregard of the safety of others, and death results, the offender is guilty of involuntary manslaughter." (*Ibid.*)[7]

 Thus, *Stuart* does not require an act "inherently dangerous in the abstract" for any form of manslaughter. It merely requires that the unlawful act causing death be committed "through criminal negligence." (*Stuart, supra,* 47 Cal.2d 167, 174.)

*People* v. *Wright, supra,* 60 Cal.App.3d 6, on which the Court of Appeal and defendant rely for their understanding of *Stuart,* also erroneously read *Stuart* as holding that under section 192(b) the misdemeanor offense itself must be inherently dangerous. However, the court which decided *Wright,* after considering *People* v. *Williams, supra,* 13 Cal.3d 559, 563-564, has since concluded, properly, that assault and battery, neither of which is an inherently dangerous misdemeanor, may be predicates for a conviction of involuntary manslaughter under section 192(b). (See *People* v. *Clark* (1982) 130 Cal.App.3d 371, 382-383 [181 Cal.Rptr. 682].) Although bound by what it believed to be the holding of *Stuart,* the *Wright* court itself recognized the anomaly created by that construction of section 192(b)—an unintended killing resulting from a misdemeanor that is not inherently dangerous would not be punishable as manslaughter even if committed with gross negligence. (*People* v. *Wright, supra,* 60 Cal.App.3d 6, 11, fn. 5.) The result of this erroneous understanding of *Stuart* in *Wright* was to exempt from the scope of liability for involuntary manslaughter the killing of a child whose death was caused by physical abuse inflicted by her parents, a result that could not have been contemplated by the Legislature.

We are satisfied therefore that the offense must be dangerous under the circumstances of its commission. The inherent or abstract nature of a misdemeanor which underlies an involuntary manslaughter charge is not dispositive.

Defendant argues alternatively that, because only an inherently dangerous felony may be the predicate for conviction of second degree murder (§ 187)

---

[7]Although *Stuart* itself did not involve vehicular manslaughter, it refers generally to section 192 and, as discussed, relies on several cases—including two of our cases—involving *vehicular* manslaughter. Moreover, the legislative history indicates that in 1945, when the Legislature added a vehicular manslaughter provision to section 192, it deliberately adopted the same language used for ordinary manslaughter, i.e., "unlawful act, not amounting to felony"—despite the fact that the former statute governing vehicular manslaughter (former Veh. Code, § 500) did not include the phrase.

under the felony-murder rule, it follows that only an inherently dangerous misdemeanor should qualify under section 192. Nothing in the history or language of sections 192(b) and 192(c) supports that theory. Moreover, the second degree felony-murder rule, which substitutes the mental state present in the commission of the felony for the malice element of murder when a death occurs in the commission of an inherently dangerous felony (*People* v. *Patterson* (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549]), is not relevant to understanding the elements of manslaughter. The judicial limitation on application of the felony-murder rule to killings committed in furtherance of "inherently dangerous" felonies exists only to ensure that malice, which is not an element of manslaughter, is established. The felony-murder rule "artificially imposes malice as to one crime because of defendant's commission of another" and thereby satisfies the standard of culpability necessary to raise a homicide to murder. (*People* v. *Phillips, supra,* 64 Cal.2d 574, 583, fn. 6.) The doctrine has been limited to felonies that are inherently dangerous because the felony-murder rule "erodes the relation between criminal liability and moral culpability." (*People* v. *Washington* (1965) 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130].)

The Legislature has provided express standards of culpability in section 192(c). It is not the function of this court to rewrite or restrict those standards. Nor would there be reason to do so in construing and applying section 192(c)(1). It applies only when the violation of a misdemeanor statute or ordinance is committed through conduct that qualifies as gross negligence. A conviction of involuntary manslaughter under these circumstances poses no threat of eroding the relation between criminal liability and moral culpability.

### III

### *Instructions*

Defendant's argument that it was incumbent on the trial court to make a proper determination that each offense with which he was charged was inherently dangerous in the abstract as a matter of law lacks merit for the reasons stated above. Therefore, the trial court may have erred in instructing the jury that Vehicle Code section 22349 is an offense which constitutes an inherently dangerous act in the abstract, but that error was not prejudicial. Other instructions ensured that the jury necessarily found all of the elements of vehicular manslaughter in returning its verdict. In particular, with regard to criminal culpability, the court instructed the jury that it was required to

determine that defendant's conduct constituted gross negligence in the circumstances.[8] Therefore, under the instructions given, the jury necessarily found that defendant drove his vehicle in a manner which constituted a Vehicle Code misdemeanor or infraction; that he was grossly negligent under the circumstances in which the violation was committed; and that, as a result of his conduct, a death occurred. Nothing more was required for conviction under section 192(c)(1).[9]

## IV

### Disposition

Because the Court of Appeal concluded that reversal was necessary because the trial court included violation of Vehicle Code section 22349 among those misdemeanors that might support conviction under section 192(c)(1), it did not reach defendant's other assignments of error—that the trial court erred (1) in refusing a requested instruction on reckless driving as a lesser related offense, and (2) in permitting lay witness opinion testimony. Those issues were not raised by defendant in his answer to the petition for review and are not within this court's grant of review.

The judgment of the Court of Appeal is reversed and the matter remanded to the Court of Appeal with directions to vacate its judgment and consider the remaining issues on appeal.

Lucas, C. J., Kennard, J., George, J., Werdegar, J., and Arabian, J.,* concurred.

**MOSK, J.**—I concur in the judgment.

I agree with much the majority say. An "unlawful act, not amounting to felony" under Penal Code section 192, subdivision (c)(1), need not be a

---

[8]The instructions given to the jury in this case required the jury to find gross negligence and explained: "The mere fact that a defendant drives a motor vehicle and violates a traffic law is insufficient in itself to constitute gross negligence. You must determine from the overall circumstances of the manner in which he drove whether his conduct constituted gross negligence." Gross negligence was defined in a way which made it necessary for the jury to find that defendant's conduct in driving was foreseeably dangerous to human life.

[9]As the People note, a Vehicle Code violation is not necessary to conviction under section 192(c)(1). Under the alternative prong of that section, if the prosecution fails to prove a Vehicle Code violation, the jury may still convict the defendant of vehicular manslaughter under section 192(c)(1) if it finds that the defendant drove in a grossly negligent manner and, that this conduct was the proximate cause of a death.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

misdemeanor or infraction that is *inherently dangerous in the abstract* to human life or safety; it may also be one that is *dangerous in its commission.* I believe this conclusion is compelled by our decision in *People* v. *Stuart* (1956) 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705]. In my view, the majority's analysis of *Stuart* (maj. opn., *ante,* at pp. 986-988, & fns. 6 & 7) is irrefutable.

I do not agree, however, with the majority's suggestion that the unlawful act must be dangerous in its commission *as opposed* to dangerous in itself. It is confusing. It is also wrong.

Because the Court of Appeal prejudicially erred in holding that under Penal Code section 192, subdivision (c)(1), the underlying misdemeanor offense must in all cases be one that is inherently dangerous in the abstract, its judgment must be reversed.