Filed 2/18/26

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085256 |
| v. | (Super.Ct.No. MENSB2400004) |
| T.B., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Kawika Smith, Judge. Affirmed.

Thomas W. Sone, Public Defender and Edward O'Brien, Deputy Public Defender for Defendant and Appellant.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Amanda J. Murray and Linnea D. Piazza, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant T.B. is serving a life sentence for murder. Her severe mental illness has proven resistant to treatment and she cannot make medical decisions. She appeals from a trial court order authorizing electroconvulsive therapy (ECT) under Penal Code sections 2670 through 2680.[1] Her sole argument is a novel one of statutory interpretation. The Penal Code requires that the court find that there are "no less onerous alternatives" to ECT. (See § 2679, subd. (b).) She claims that encompasses not only available medical treatments—she concedes ECT is medically necessary—but also procedural alternatives to obtaining the patient's informed consent. In her view, the possibility of applying the statutory process for obtaining informed consent to ECT from a surrogate decisionmaker under Welfare and Institutions Code section 5326.7 "renders *nonconsensual* ECT unnecessary." We reject defendant's statutory interpretation and affirm the trial court's order.

FACTS

Defendant is serving a life sentence for a murder committed in 2011. She has been diagnosed with "schizoaffective disorder, bipolar type, which is a chronic mental health condition characterized by symptoms of schizophrenia (such as hallucinations, delusions, and disorganized thought process) and a mood disorder (such as mania and depression)." Since her incarceration, she has mostly been housed in an inpatient psychiatric treatment program rather than in the general population. Even within that intensive treatment program, she has generally been in her cell unable to participate in groups or other

---

[1] Undesignated statutory references are to the Penal Code.

activities. Medications administered under an involuntary medication order, which has been in effect for years, have been ineffective.

In September 2024, the acting warden of defendant's prison petitioned for an order authorizing defendant to be treated with ECT. At the evidentiary hearing on the petition, the parties stipulated that defendant lacks the capacity to give informed consent to ECT. On appeal, she concedes that ECT is "*medically* necessary," abandoning her trial court argument that the People failed to demonstrate that ECT would benefit her. The trial court granted the petition, authorizing ECT for six months, the longest period statutorily allowed. (See § 2679, subd. (c).)

## DISCUSSION

Where an inmate patient is incapable of giving informed consent, section 2679, subdivision (b) requires a court to find by clear and convincing evidence that there are "no less onerous alternatives" to ECT before approving its administration. Defendant's view is that a less onerous alternative to administering ECT to an inmate patient who is incapable of giving informed consent is to seek the consent of a surrogate decisionmaker. She argues that unless it proves impossible to obtain consent from a surrogate decisionmaker under Welfare and Institutions Code section 5326.7, subdivision (g), "*nonconsensual* ECT" is "unnecessary." We are not persuaded.[2]

---

[2] The trial court's order authorizing ECT expired while this appeal was pending. Nevertheless, we agree with the parties that we should not dismiss the appeal as moot because it presents an issue that is "both capable of repetition and likely to evade appellate review" because of the limited period for which ECT is ordered. (*D.K. v. Office*

*[footnote continued on next page]*

3

Defendant raises a question of statutory interpretation that we examine de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) "In ascertaining the Legislature's intent, we turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231.) "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness.'" (*People v. Pieters* (1991) 52 Cal.3d 894, 899.)

The administration of "organic therapy" in prisons is governed by sections 2670 through 2680, which were enacted in 1974. (Stats. 1974, ch. 1513, p. 3327, § 1) The term encompasses, among other things, "[s]hock therapy, including, but not limited to, any convulsive therapy," as well as any "electronic stimulation of the brain." (§ 2670.5, subd. (c)(2), (3).) Two general matters show both the centrality of consent and the importance of the court's role in approving the administration of ECT to inmate patients. First, the statutes recognize that "no person with the capacity for informed consent who refuses organic therapy shall be compelled to undergo such therapy." (§ 2670; see also § 2600, subd. (a) [incarcerated person may "be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests"].) Second, even where an incarcerated person is capable of informed consent, the warden normally must petition for court authorization to perform organic therapy. (§ 2670.5, subd. (a)(1) ["If the person gives his or her informed consent to organic therapy, it shall be administered only if there

_____

*of Administrative Hearings* (2024) 101 Cal.App.5th 1206, 1213.) The People assert that the issue may repeat with defendant.

4

has been compliance with Sections 2675 to 2680, inclusive"]; but see § 2671, subd. (b) [allowing "a program of shock therapy . . . for a period not to exceed three months in any one-year period without prior judicial authorization" with informed consent of the incarcerated person].)

ECT also is excluded from a provision that generally governs medical procedures for inmates who cannot consent to treatment. Since becoming effective in January 2016, section 2604 has provided for appointing a surrogate for health care decisions "for an inmate patient who lacks capacity to give informed consent or make a health care decision." (§ 2604, subd. (t)(1).) For most medical decisions, the appointment of a "surrogate decisionmaker" for such an inmate patient is mandatory. (*Id.*, subd. (q)(1).) Section 2604 provides an expedited surrogate appointment process for most inmate medical services. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1423 (2015-2016 Reg. Sess.) as amended Apr. 20, 2015, p. 8 [§ 2604 intended to "'speed[] up the process for obtaining the necessary authority to provide treatment services in cases where the inmate lacks decision making capability'"].) The inmate patient's surrogate "shall follow the inmate patient's personal values and other wishes to the extent those values and wishes are known." (§ 2604, subd. (q)(4).) "The legislature, however, excluded ECT and a small number of other medical procedures from section 2604." (*In re Terrazas* (2022) 73 Cal.App.5th 960, 969 (*Terrazas*); see § 2604, subd. (t)(2).)

Instead, for inmate patients who cannot give informed consent to ECT, the Penal Code normally requires "a judicial determination that the medical procedure would help the person, and that it is necessary and medically appropriate." (*Terrazas*, *supra*, 73 Cal.App.5th at pp. 967-968; see § 2670.5, subd. (a)(2) ["If the person lacks the capacity for informed consent . . . the warden shall secure an order from the superior court to authorize the administration of the therapy in accordance with Sections 2675 to 2680, inclusive"]; but see § 2671, subd. (a) [allowing "shock treatments" on authorization of attending physician in "emergency" circumstances "for no longer than seven days in any three-month period"].) "Specifically, the court 'shall determine by clear and convincing evidence that such therapy . . . would be beneficial; that there is a compelling interest justifying the use of the organic therapy upon the person; that there are no less onerous alternatives to such organic therapy; and that such organic therapy is in accordance with sound medical-psychiatric practice.' (§ 2679, subd. (b).)." (*Terrazas*, *supra*, 73 Cal.App.5th at p. 968.)

Apart from the Penal Code procedure for inmates, a different statutory procedure applies for administering ECT to an involuntary patient who is civilly confined under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq., LPS Act). Under Welfare and Institutions Code section 5326.7, subdivisions (a) and (b), the treating physician and then a committee of two other physicians unanimously agree that "all reasonable treatment modalities have been carefully considered," that ECT "is definitely indicated," and that such treatment is "the least drastic alternative available for this

6

patient at this time." The court is not involved in this decision, which is "'a purely medical determination . . . within a doctor's professional judgment.'" (*Conservatorship of Fadley* (1984) 159 Cal.App.3d 440, 446.) Treatment can proceed without court authorization if the patient's physician and legal counsel both agree the patient can give written informed consent and the patient chooses to give written informed consent. (Welf. & Inst. Code, § 5326.7, subds. (d), (e).)

If either the patient's physician or attorney believes the involuntary patient lacks capacity to give written informed consent, then a petition may be filed for the court "to determine the patient's capacity to give written informed consent." (Welf. & Inst. Code, § 5326.7, subd. (f).) If, after an evidentiary hearing, the court "determines that the patient does not have the capacity to give written informed consent, then treatment may be performed upon gaining the written informed consent . . . from the responsible relative or the guardian or the conservator of the patient." (Welf. & Inst. Code, § 5326.7, subd. (g).) There is no procedure in Welfare and Institutions Code section 5326.7 for administering ECT to an involuntary patient without either (1) the written informed consent of either the patient, where the patient can give it, or (2) the written informed consent of a surrogate decisionmaker, where the patient lacks capacity to give informed consent.

Defendant concedes that nothing in sections 2670 through 2680 expressly requires the warden to seek informed consent from a surrogate decisionmaker where the inmate patient lacks capacity to give informed consent. In her view, however, imposing ECT with the consent of a surrogate decisionmaker, as contemplated in Welfare and

7

Institutions Code section 5326.7, subdivision (g), is a lesser abridgment of an inmate patient's rights than imposing ECT without surrogate consent, so that possibility must be explored before the "no less onerous alternative" requirement of section 2679, subdivision (b), can be satisfied. As she puts it: "Because consensual ECT was available . . . consensual ECT was a 'less onerous alternative' and nonconsensual ECT was unnecessary." She views section 2679, subdivision (b) as "a narrow exception to the fiduciary consent requirement" of Welfare and Institutions Code section 5326.7, subdivision (g).

The phrase "no less onerous alternatives to such organic therapy" in section 2679, subdivision (b), is not defined. One natural reading, though, is the one that the People propose: that the statute refers to medical alternatives to the organic therapy (such as psychotherapy or medications) rather than to alternative procedural methods of approving the therapy. Accordingly, there is discussion of "alternatives" in the same article of the Penal Code, in section 2673, which specifies what information must be communicated in obtaining informed consent. (See *People v. Wells* (1996) 12 Cal.4th 979, 986 ["In construing a statute, unless a contrary intent appears [citations], the court presumes that the Legislature intended that similar phrases be accorded the same meaning"].) That information includes: "The reasonable *alternative* organic therapy or psychotherapeutic modality of therapy, or nonorganic behavior modification programs, and why the organic therapy recommended is the therapy of choice. These *alternatives* shall be described and explained to the person in the manner specified in this section." (§ 2673, subd. (a)(7)

(italics added).) The phrases "such therapy" and "such organic therapy" also appear in section 2673: "The likelihood and degree of improvement, remission, control, or cure resulting from the administration of *such organic therapy*, and the likelihood, nature, and extent of changes in and intrusions upon the person's personality and patterns of behavior and thought or mentation and the degree to which these changes may be irreversible. This information shall indicate the probable duration and intensity of *such therapy* and whether *such therapy* may have to be continued indefinitely for optimum therapeutic benefit." (§ 2673, subd. (a)(4) (italics added).) This supports the People's interpretation of section 2679, subdivision (b)'s "no less onerous alternatives to such organic therapy" as referring to a comparison of available medical options, not alternative possibilities for obtaining informed consent.

Defendant is incorrect that the People's interpretation renders the word "such" superfluous. The phrase "no less onerous alternatives to such organic therapy" is not "semantically equivalent" to "no less onerous alternatives to organic therapy." Rather, in the article of the Penal Code addressing organic therapy, the term "such organic therapy" is used to describe the particular organic therapy that the warden has asked the court to approve. (§ 2675, subd. (a) ["to administer the therapy the warden . . . shall petition the superior court . . . for an order authorizing such organic therapy"].) The word "such," then, serves the grammatical purpose of referring to the specific organic therapy that the court must address—in this case, ECT. Without "such," the phrase refers to alternatives to "organic therapy" generally. In the same way, the statute elsewhere requires for

9

informed consent that the patient be apprised of the likelihood of benefits and harms of "such organic therapy," not of organic therapy in general. (§ 2673, subd. (a)(4).) Defendant's reading of "such" as having the "substantive purpose" of distinguishing "ECT pursuant to [sections 2670 through 2680] from ECT administered by other *legal means*, e.g., informed consent or upon a surrogate's consent" is not grounded in grammar or in the logic of the statute.

Defendant's novel statutory interpretation would mean that the warden is required to seek the consent of a surrogate decisionmaker under Welfare and Institutions Code section 5326.7 before seeking judicial authorization to proceed with ECT under section 2679. This is difficult to reconcile with the Legislature's decision to exclude ECT from section 2604, which provides for surrogate decisionmaking for most medical decisions involving an inmate who cannot consent. We would not expect such an exclusion if the Legislature intended to require the warden to seek approval from a surrogate decisionmaker. The Legislature could (in theory) have decided to exclude ECT from the expedited section 2604 process for appointment of a surrogate decisionmaker and instead require compliance with the more rigorous procedures of Welfare and Institutions Code section 5326.7. But, if so, we would expect to find some evidence of such intent in the statutory language or in the legislative history of section 2604. We have found nothing of the sort. It does not make sense that the Legislature would have excluded ECT from section 2604 surrogate decisionmaking while silently intending a more demanding

surrogate process to be latent in section 2679's general requirements for what a court must determine.

Defendant suggests her statutory interpretation is necessary to avoid violating equal protection principles. This argument is not developed, however, and it is not obvious why that might be so. We are "not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) We therefore decline to consider it. Defendant also proposes her interpretation "harmonizes" the authorization procedure of sections 2670 through 2680 with section 2600, which declares the policy that an incarcerated person may "be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests," and with Welfare and Institutions Code section 5326.7. We are not persuaded that there is any discord between these statutes that requires harmonization.

## DISPOSITION

The order authorizing electroconvulsive therapy is affirmed.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

LEE
J.

11