Filed 5/3/22  P. v. Hampton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093690 |
| Plaintiff and Respondent, | (Super. Ct. No. 07F01659) |
| v. | |
| JONATHAN ANDREW HAMPTON, | |
| Defendant and Appellant. | |

A jury found defendant Jonathan Hampton guilty of involuntary manslaughter and found true an associated firearm enhancement.  He was sentenced to an aggregate term of eight years in prison.  The trial court imposed a restitution fine of $300 and defendant received 5,043 days of custody credits against his sentence.  Defendant was given credit for time served.

Defendant appeals, contending the trial court failed to instruct the jury on the intent element of involuntary manslaughter, thereby violating his rights to due process and a jury trial guaranteed by the United States Constitution.  Specifically, he argues the trial court committed reversible error by failing to instruct the jury on criminal negligence.  He further argues the trial court's failure to apply excess custody credits to the restitution fine violated the ex post facto clause of article I, section 10, of the United States Constitution.  We requested supplemental briefing regarding the application of the

recent enactment of Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3). Defendant filed a supplemental brief arguing he is entitled to resentencing pursuant to the changes in law effectuated by Senate Bill No. 567; the People did not file a supplemental brief.

We conclude the trial court erred in failing to instruct the jury on criminal negligence. The error, however, was harmless and does not warrant reversal. We nevertheless conclude remand is warranted for resentencing in light of Senate Bill No. 567. Because defendant will be resentenced, we decline to address his arguments concerning the application of his excess custody credits to the restitution fine.[1] (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 [when a case is remanded for resentencing, the trial court may consider the entire sentencing scheme and has jurisdiction to modify any aspect of a defendant's sentence].) We vacate the sentence and remand the matter for resentencing, but otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:30 a.m. on February 15, 2007, Charles B. had just finished cleaning a pool at a home in a residential neighborhood. As he was putting his equipment back into his truck, he heard a sound that seemed "like a backfire" and then a "thump, thump" followed by the sound of "skid marks going." The sounds came from the other side of a six-foot hedge near his truck. Charles believed it sounded like tires "[p]eeling out" and as if "something was being thrown out of the vehicle." Charles walked around the hedge and saw a young man, later identified as J. G., in the street, bleeding, with a gunshot wound to his head. J. G. was unresponsive but "flopping around." Charles called 911.

---

[1] We recognize the parties agree defendant is entitled to have his excess custody credits applied to his $300 restitution fine because, at the time of defendant's sentencing, former Penal Code section 2900.5, subdivision (a), allowed excess custody credits to be applied to the balance of restitution fines imposed pursuant to Penal Code section 1202.4. (See former Pen. Code, § 2900.5, subd. (a), added by Stats. 1995, ch. 1077, § 28.)

At the same time, Ronald B. was walking in the area when he saw a dark-colored car speeding toward him, traveling "two times too fast." Ronald momentarily locked eyes with the driver, later identified as defendant, who had an angry look on his face.

At trial, Brian L. testified he and J. G. frequently worked together going door to door selling building materials to remodel homes. In early January 2007, J. G. and Brian were going door to door looking for work when they met defendant. Defendant had been driving when he stopped to talk to J. G. Defendant introduced himself as "J-Bird" and J. G. introduced himself as "Courtney." At the time, defendant was selling narcotics and told J. G. he could get "pretty much any kind of drugs." J. G. and defendant exchanged phone numbers. J. G. later bought marijuana from defendant.

Defendant testified that, on the morning of February 15, 2007, J. G. called him to purchase "a couple hundred ecstasy pills and some marijuana." J. G. was leaving on a trip with his dad and told defendant he needed the drugs before 2:00 p.m. Defendant told J. G. he was unable to get any pills until later that day and explained he also wanted to buy some pills. After a series of phone calls, J. G. and defendant agreed defendant would drive them to meet J. G.'s other supplier, from whom defendant planned to buy $400 worth of pills.

Defendant testified he met J. G. at a convenience store. J. G. directed defendant to a residential area, where defendant parked in a driveway. After defendant put the car in park, he felt the barrel of a gun against his temple. Defendant put his hands up and J. G. demanded defendant hand over all his money. Defendant, scared and panicked, kept his hands raised. J. G. proceeded to empty the cash from defendant's pocket with one hand while continuing to aim the gun at defendant with the other. Then, as J. G. stepped out of the passenger door, defendant impulsively put the car in reverse and reached out to grab the gun from J. G.'s hand. J. G. lost control of the gun, which bounced off the ceiling and landed in defendant's lap.

3

As the car rapidly accelerated down the driveway, J. G. lost his footing and was caught on the passenger door. When the car reached the end of the driveway, defendant turned the wheel and pulled onto the street. He shifted the car from reverse into drive and pressed the gas pedal, causing the tires to skid. J. G., who at that point was standing on the street, then lunged through the front passenger door, reaching for the gun in defendant's lap. Defendant's back was against the driver's door with his torso facing J. G. Defendant grabbed the gun with his right hand and extended his arm toward J. G., yelling, "watch out." When defendant's elbow locked, the gun went off.

Defendant testified he grabbed the gun impulsively, without thinking, and did so to "get out of that whole situation." Defendant saw J. G.'s head "open up" before J. G. landed on the street. Defendant testified he did not intend to shoot J. G. and denied pushing him out of the car. Defendant sped out of the area, driving around until he found the freeway. Once on the freeway, he noticed the gun on his lap and threw it out of the window.

Defendant testified he did not call the police because he was 18 years old, a minority, and did not think the police would believe him because of the things he was doing and who he was. He also did not want to admit he had been in the middle of a drug deal. Defendant eventually went to his brother's house and tried to clean the blood off the inside panel of the front passenger door. He wiped blood off the car for a few minutes and then put the towel and J. G.'s phone, wallet, and sweater into a bag.

In closing arguments, the prosecution's theory was not that defendant had the intent to kill J. G., but rather that defendant had pointed the gun at J. G. and intentionally pulled the trigger, knowing the act was dangerous to human life. The prosecutor argued defendant drove J. G. to an isolated area with the intent to rob him of cash and other items at gunpoint. When J. G. resisted, defendant intentionally shot him in the head and kicked him out of the car, onto the street. In contrast, the defense theorized defendant's actions were justified because he acted in self-defense. Defense counsel argued

4

defendant was defending himself against an armed robbery perpetrated by J. G., "scooped up" the gun to prevent J. G. from regaining control of it, and accidentally discharged the gun, fatally wounding J. G.

The jury found defendant not guilty of murder and voluntary manslaughter but found him guilty of the lesser offense of involuntary manslaughter. The jury also found true defendant personally used a firearm in the commission of the offense. On February 19, 2021, the trial court sentenced defendant to a total term of eight years in prison, composed of the upper term of four years for involuntary manslaughter plus four years consecutive for the firearm use enhancement. Defendant received 5,043 days of custody credits. His sentence was deemed time served. The trial court imposed a restitution fine of $300, and an equal and suspended parole revocation fine.

DISCUSSION

I

*The Instructional Error Was Harmless*

Defendant contends the trial court erred in failing to instruct the jury on criminal negligence, an essential element of involuntary manslaughter. Specifically, he argues this omission incorrectly conveyed to the jury commission of the predicate offense and causation were sufficient to find him guilty of the offense. The People argue defendant forfeited his right to challenge the jury instructions by failing to object at trial. The People further argue "any error in instructing on involuntary manslaughter based on brandishing a firearm was harmless." We disagree with the People's forfeiture argument but agree the instructional error was harmless.

An appellate court may review any instruction given, refused, or modified even though no objection was made in the trial court if the substantial rights of the defendant are affected thereby. (Pen. Code,[2] § 1259; *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7.) We review the merits of defendant's instructional error claim to determine

---

[2]    All further section references are to the Penal Code unless otherwise specified.

5

whether the instruction was a correct statement of law or affected defendant's substantive rights. In reviewing the merits, "[w]e determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

Section 192, subdivision (b) defines involuntary manslaughter as an unlawful killing occurring during the commission of "an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, [accomplished] in an unlawful manner, or without due caution and circumspection." Section 192 has been interpreted to encompass an unintentional killing occurring during the commission of a noninherently dangerous felony when committed without due caution or circumspection. (*People v. Burroughs* (1984) 35 Cal.3d 824, 835, overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 88-91.)

Involuntary manslaughter is a lesser offense of murder, distinguished by its mens rea. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.) The governing mens rea for involuntary manslaughter is criminal negligence. (*Id.* at p. 1007; *People v. Wells* (1996) 12 Cal.4th 979, 986.) Criminal negligence exists when a defendant engages in conduct that is "such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances. . . ." (*People v. Penny* (1955) 44 Cal.2d 861, 879-880.)

The trial court instructed the jury with a modified version of CALCRIM No. 580, describing the elements of involuntary manslaughter, as follows: "When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the offense is involuntary manslaughter. [¶] . . . [¶] The defendant committed involuntary manslaughter if: [¶] 1. The defendant committed a crime to wit: brandishing a firearm; [¶] 2. The defendant committed the crime; [¶] AND

6

[¶] 3. The defendant's acts caused the death of another person.  [¶]  In order to prove murder or voluntary manslaughter, the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for human life.  If the People have not met either of these burdens, you must find the defendant not guilty of murder and not guilty of voluntary manslaughter."

Defendant is correct in asserting the modified instruction, as given, deviated from the pattern instruction by omitting criminal negligence as an element of involuntary manslaughter and failing to provide the associated definition.  The second element provided in the given instruction stated "[t]he defendant committed the crime," whereas the pattern instruction reads "[t]he defendant committed the (crime/[or] act) *with criminal negligence*."  (CALCRIM No. 580, italics added.)  The pattern instruction further provides the following definition for criminal negligence:  "*Criminal negligence* involves more than ordinary carelessness, inattention, or mistake in judgment.  A person acts with criminal negligence when:  [¶]  1. He or she acts in a reckless way that creates a high risk of death or great bodily injury; [¶] AND [¶]  2. A reasonable person would have known that acting in that way would create such a risk.  [¶]  In other words, a person acts with criminal negligence when the way he or she acts is so different from the way an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act."  (CALCRIM No. 580.)

Generally, a trial judge has considerable discretion in choosing the language of a jury instruction -- so long as the substance of the relevant law is adequately expressed.  (*Boyle v. U.S.* (2009) 556 U.S. 938 [173 L.Ed.2d 1265]; *People v. Hawthorne* (1992) 4 Cal.4th 43, 72.)  Instructional error occurs when the trial court fails to instruct the jury on a material element of an offense.  (*People v. Flood*, *supra*, 18 Cal.4th at p. 480; *People v. Alvarez* (1996) 14 Cal.4th 155, 220.)

In *Cox*, our Supreme Court reviewed an instruction of involuntary manslaughter like that presented here and found the instruction failed to provide the jury with an accurate statement of the law. (*People v. Cox* (2000) 23 Cal.4th 665.) In that case, the jury was instructed on involuntary manslaughter predicated on misdemeanor battery requiring only general intent. (*Id.* at p. 669.) The trial court informed the jury misdemeanor battery is an inherently dangerous offense in the abstract, and therefore a predicate for involuntary manslaughter, without requiring any further proof of the circumstances of its commission. (*Ibid.*) The trial court did not instruct the jury that involuntary manslaughter required the specific intent of criminal negligence. (*Id.* at pp. 669-670.)

Our Supreme Court concluded, because "the test is not whether the predicate misdemeanor is inherently dangerous in the abstract, but whether it is dangerous under the circumstances of its commission," the instruction effectively removed the intent or dangerousness element from the jury's determination. (*People v. Cox*, *supra*, 23 Cal.4th at pp. 676-677 [reaffirming principles in *People v. Wells*, *supra*, 12 Cal.4th at p. 988].) The court reiterated it is a question of fact for the jury whether a defendant committed the predicate unlawful act with criminal negligence, that is, whether the unlawful act was committed in a dangerous manner. (*Cox*, at pp. 676-677.) Because the trial court had an obligation to instruct the jury on criminal negligence and failed to do so, our Supreme Court concluded instructional error had occurred. (*Ibid.*)

Like the misdemeanor battery predicate for the involuntary manslaughter charge in *Cox*, the brandishing a firearm predicate for the involuntary manslaughter charge here could be done in a criminally negligent manner or in a noncriminally negligent manner, depending on the circumstances. Accordingly, the jury should have been instructed on the criminal negligence element of involuntary manslaughter to ensure the jury found the circumstances surrounding the killing met the requisite mens rea to find defendant guilty of involuntary manslaughter. The trial court, however, omitted criminal negligence as an

8

element of involuntary manslaughter. The trial court also did not instruct the jury in equivalent language to convey the applicable standard of criminal negligence. (See, e.g., *People v. Butler*, *supra*, 187 Cal.App.4th at p. 1013, fn. 9 [no instructional error where instruction as a whole conveyed the criminal negligence standard by stating, " '[t]he defendant committed involuntary manslaughter if . . . [¶] the defendant committed a crime that posed a high risk of death or great bodily injury because of the way in which it was committed' "].) We thus agree with defendant the modified involuntary manslaughter instruction was given in error. (*People v. Merritt* (2017) 2 Cal.5th 819, 821 [an instruction which omits a necessary element of the offense is clearly erroneous].) We nevertheless find defendant was not prejudiced by the instructional error.

The parties agree review of instructional errors are amenable to harmless error review for prejudice. The parties disagree however as to the applicable prejudice standard. Defendant contends the federal harmless-beyond-a-reasonable-doubt standard enunciated in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] applies, whereas the People argue the state reasonably-probable standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818 applies. We need not address the parties' dispute regarding the appropriate prejudice analysis because, as explained *post*, defendant suffered no prejudice under either standard.

Instructions failing to include an element of an offense from the jury's consideration must be assessed in the context of the trial to determine whether the error was prejudicial. (*People v. Flood*, *supra*, 18 Cal.4th at p. 489.) We conduct a thorough examination of the record to evaluate the error's effect on the jury's verdict. (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

Defendant contends the error was prejudicial because, had the jury been instructed on criminal negligence, it could have found he accidentally shot the victim while brandishing the firearm. We are not persuaded.

9

The very theory upon which defendant relies to show prejudice was rejected by the jury.  Defendant's trial counsel argued defendant's actions were justified because he acted in self-defense.  Specifically, trial counsel argued defendant was defending himself against an armed robbery perpetrated by J. G., "scoop[ed] up" the gun to prevent J. G. from regaining control of it, and accidentally discharged the gun, fatally wounding J. G.  The trial court instructed the jury on the defense of excusable homicide by "accident or misfortune," stating a homicide is excusable, and therefore not unlawful, if: "1. The defendant was doing a lawful act in a lawful way; [¶] 2. The defendant was acting with usual and ordinary caution; [¶] AND [¶] 3. The defendant was acting without any unlawful intent."  (CALCRIM No. 510; see also § 195.)  The trial court further instructed the jury:  "A person acts with *usual and ordinary caution* if he or she acts in a way that a reasonably careful person would act in the same or similar situation."  (CALCRIM No. 510.)  For the jury to have accepted defendant's defense of excusable homicide, it would have had to find defendant accidentally killed the victim while brandishing the firearm and in doing so defendant acted like a reasonably careful person under the circumstances.  (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 54.)  The jury however rejected the killing was the result of "accident or misfortune" and instead found defendant guilty of involuntary manslaughter.

Moreover, we agree with the People the record provides overwhelming evidence that, absent the instructional error, the jury would have found defendant criminally negligent in committing the act of brandishing the firearm -- thus supporting the involuntary manslaughter conviction.  As noted *ante*, a struggle ensued between defendant and the victim over control of the gun.  Defendant was seated in the driver's seat and quickly maneuvered his vehicle down the driveway, causing the victim to lose his balance.  The gun landed in defendant's lap and the victim thereafter lunged into defendant's car, reaching for the gun.  At that point, defendant admits he picked up the gun, pointed it at the victim, and said, "watch out."  Then, as defendant's elbow locked,

the gun "accidentally" discharged, striking the victim in the head. Defendant testified he acted on impulse, without thinking, and did so to "get out of that whole situation."

The foregoing evidence shows defendant deliberately grabbed the gun and pointed it at the victim -- such an act is dangerous to human life and supports an involuntary manslaughter conviction.[3] (See, e.g., *People v. Southack* (1952) 39 Cal.2d 578, 583-585 [involuntary manslaughter conviction affirmed where defendant pointed loaded gun at victim during argument and gun accidentally discharged]; *People v. Velez* (1983) 144 Cal.App.3d 558, 562 [involuntary manslaughter conviction affirmed where defendant jokingly pointed gun at victim and gun accidentally discharged].) Defendant's testimony essentially establishes the omitted element of criminal negligence and, considering the jury's findings, we conclude the result would have been no different had the trial court instructed the jury on criminal negligence. (See *People v. Flood*, *supra*, 18 Cal.4th at p. 504; *Connecticut v. Johnson* (1983) 460 U.S. 73, 87 [74 L.Ed.2d 823, 977] [instructional error harmless where the defendant concedes or admits the omitted element].)

For the reasons stated above, we conclude the instructional error was harmless beyond a reasonable doubt under *Chapman*, and thus inevitably harmless under *Watson*.

II

*Resentencing Is Appropriate Under Recently Enacted Senate Bill No. 567*

At the time of defendant's sentencing, former section 1170, subdivision (b) provided the trial court broad discretion to choose between the lower, middle, or upper term, which "in the court's discretion, best serves the interests of justice," after considering the record in the case, the probation report, other reports, statements in

---

[3]   See generally, *In re Dennis M.* (1969) 70 Cal.2d 444, 461 [it is well settled firearms are dangerous instrumentalities requiring a great degree of care in their use; criminal negligence frequently found in an unintentional killing with a gun]; *People v. Searle* (1917) 33 Cal.App. 228, 231 [it is criminally negligent to point a firearm at another without examining to see whether it is loaded, or to handle or use it in a place where discharge is likely to injure another].

aggravation or mitigation, and any other evidence introduced at the sentencing hearing. (Former § 1170, subd. (b).) This changed however on January 1, 2022, when Senate Bill No. 567 went into effect. (Cal. Const., art. IV, § 8, subd. (c).)

As relevant here, Senate Bill No. 567 limits the trial court's discretion in selecting a determinate sentence and strictly limits the trial court's ability to impose an aggravated term of imprisonment absent the existence of specified circumstances. (§ 1170, subd. (b)(1)-(3).) Indeed, the trial court shall now, "in its sound discretion, order imposition of a sentence not to exceed the middle term," and "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1), (2).)

Section 1170 also now provides, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term," if the trial court finds youth "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6), added by Stats. 2021, ch. 731, § 1.3.) The term "youth" in section 1170, subdivision (b)(6)(B) is found in section 1016.7, subdivision (b). Section 1016.7 was added by Assembly Bill No. 124 (Stats. 2021, ch. 695, § 4), and provides "[a] 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).) Here, defendant was under 26 years of age on the date the offense was committed.

We asked the parties to submit supplemental letter briefs addressing the applicability of Senate Bill No. 567. Defendant filed a supplemental brief; the People did not. We agree with defendant the amended statute should be applied retroactively to defendant's nonfinal judgment.

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) This presumption has been extended to amendments providing trial courts with the discretion to impose lesser punishment at sentencing and amendments reducing the possible punishment for certain classes of persons. (See, e.g., *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303-304 [Prop. 57, as approved by voters, Gen. Elec. (Nov. 8, 2016)]; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971-972 [Senate Bill No. 1393 (2017-2018 Reg. Sess.)]; *People v. Valenzuela* (2018) 23 Cal.App.5th 83, 87-88 [Senate Bill No. 620 (2017-2018 Reg. Sess.)].)

We accordingly vacate defendant's sentence and remand the matter for the trial court to resentence defendant in accordance with the new, more favorable rules for selecting the appropriate term.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated, and the matter remanded to the trial court for resentencing under section 1170, as amended by Senate Bill No. 567.


/s/_____
Robie, Acting P. J.

We concur:


/s/_____
Duarte, J.


/s/_____
Hoch, J.

13